84 Cal.Rptr.2d 269 (1999)
71 Cal.App.4th 841
In re MATTHEW P. et al., Persons Coming Under the Juvenile Court Law.
Orange County Social Services Agency, Plaintiff and Respondent,
v.
Sara P. et al., Defendants;
Mike K. et al., Movants and Appellants.
In re Matthew P. et al., Persons Coming Under the Juvenile Court Law.
Orange County Social Services Agency, Plaintiff and Respondent,
v.
Sara P. et al., Defendants;
Mike K. et al., Interveners and Appellants.
Nos. G023528, G023882.
Court of Appeal, Fourth District, Division Three.
April 5, 1999.
*270 Rich Pfeiffer, under appointment by the Court of Appeal, for Movants and Appellants and for Interveners and Appellants.
Laurence M. Watson, County Counsel, and Amy E. Morgan, Deputy County Counsel, for Plaintiff and Respondent.
Harold LaFlamme, Santa Ana, and Craig E. Arthur, under appointments by the Court of Appeal, for the Minors.

OPINION
SONENSHINE, J.
This case illustrates the tension between the procedural due process rights of a party to a dependency proceeding and the power of the juvenile court to control the conduct of a hearing on a modification petition. Because we find due process rights were violated, we reverse the denial of the modification petition and remand for a new hearing. We lament, however, the eight months consumed while this appeal has progressed through this court and remind dependency counsel that traditional writ relief is available to remedy errors that unnecessarily delay a dependent child's progress toward permanency and stability. (In re Pablo D. (1998) 67 Cal.App.4th 759, 761, 79 Cal. Rptr.2d 247.)
Mike and Nora K., de facto and former foster parents of Matthew P. and Zohn R., filed two separate appeals from two orders of the juvenile court: (1) an order denying their *271 motion under Welfare and Institutions Code section 388[1] seeking to regain placement of the boys with them; and (2) an order selecting long-term foster care as the permanent plan for the boys. The K.'s claim their section 388 motion should have been granted because they demonstrated changed circumstances and placement with them was in the best interests of the children. They also claim they were denied due process at both hearings because the court admitted the social worker's reports without allowing them to cross-examine him. The appeals were consolidated after the opening briefs were filed, and we dispose of both in this single opinion. We reverse the denial of the K.'s section 388 motion and affirm the order selecting the permanent plan.

Background
In July 1994, Matthew P., then six years old, and his half-sibling, Zohn R., then five months old, were detained when they were discovered sleeping in a car with their mother and Zohn's father. The family was homeless and transient and the children were dirty and neglected. The father was dependent on pain-killers, which his wife, the children's mother, obtained for him illegally.
The children were adjudicated dependents and returned to the parents under a plan of family maintenance. After less than a year, however, the parents took the children and fled to Arizona, where they were picked up when the mother tried to get pain medication for her husband. The children were returned to California, and a subsequent petition was sustained alleging physical abuse by the father, neglect by both parents, and failure to protect by the mother. The children were placed in the K.'s home in August 1995.
Nora and Mike K. had four children when Matthew and Zohn were placed with them. Nora's son Anthony from a previous marriage, whom Mike had adopted, was slightly older than Matthew; Lauren was two; Michael was one, very close in age to Zohn; and Stephanie was two months old. Nora was employed as a social worker for Los Angeles County, and Mike was employed as an inspector for an engineering firm. The K.'s quickly integrated Matthew and Zohn into the family.
After 18 months of reunification services, the juvenile court found the children could not be returned to their mother and scheduled a permanency hearing, which was held in May 1997. The social worker, Mike Waterhouse, reported the boys got along well with the K.'s four birth children and appeared happy in the K.'s home, but Matthew had exhibited some behavior problems since November 1996. He had "indicated some conflicting feelings over his loyalty to his mother and his desire to remain in his current home"; he was in the process of being tested for attention deficit hyperactivity disorder. The Orange County Social Services Agency (SSA) recommended a permanent plan of long-term foster care: The K.'s wanted to keep the boys as long as necessary, but were "not willing to accept the financial responsibility of guardianship or adoption"; Matthew had a significant attachment to his mother and wanted to maintain a relationship with her, and it was considered best to keep the boys together. The parties stipulated to SSA's recommendation, and the court ordered long-term foster care.
In October 1997, Waterhouse prepared a report for the scheduled review hearing, noting Matthew's continuing problems with "stealing at home" but his improvement at school, Zohn's developmental delays in speech, and both boys'"significant attachment to their current caretakers." He reported the K.'s "remain committed to providing long-term care for the minors" and recommended continuation of long-term foster care. The minors' counsel, however, apparently alerted the court the K.'s wished to adopt, and requested a contested review hearing for that purpose.
In the report prepared for the contested hearing, held in December 1997, Waterhouse acknowledged the K.'s had expressed an interest in adoption as early as September 1996, but shortly thereafter changed their minds because they were concerned about college expenses for six children. The K.'s were now interested in adoption, the social *272 worker reported, because (1) they were expecting twins and would lose their foster care certification (and, thus, Matthew and Zohn as foster children) unless they moved to a larger home and obtained more child care help, and (2) they were exploring the Adoption Assistance Program (AAP), which provides financial help to families who adopt special needs children. The K.'s were working with an attorney at the Youth Law Center and were considering joining a class action lawsuit in federal court over the interpretation of eligibility restrictions for assistance under the AAP. The K.'s were not willing to adopt the boys unless they would be eligible for financial assistance under the AAP.
Waterhouse stated, "The foster parents provide very good care for the minors and have been able to work through some significant behavioral problems with Matthew.... [¶] [T]his is a good placement for the minors and [SSA] is interested in reconciling the AAP issues with the caretakers. The undersigned believes that the issues of the Adoption Assistance Program and the family's commitment to follow through on adopting the minors should be resolved before the Court considers freeing the minors for adoption."
The court found long-term foster care was no longer appropriate and set the matter for a second permanency hearing in April 1998. In April, the K.'s applied for and were granted de facto parent status, and the permanency hearing was continued to June 15.
The K.'s de facto status entitled them to receive Waterhouse's report of April 17, which informed the court that the K.'s had asked to have Matthew placed in respite care because on April 2 Nora had been hospitalized for complications with her pregnancy. Zohn was placed in the same respite home "due to inadequate supervision in the home resulting from the family's current crisis." Waterhouse continued, "The minors' caretakers have been appropriate in their care of the minors until the March of this year." He explained that Matthew and the K.'s oldest son, Anthony, stole about $800 from the family's nanny, and Nora, without notifying the foster care agency or SSA, took the boys to the police department to have them booked on felony charges. Her reported intention was to "let them go through a trial and sentencing to scare them," then tell the judge they did not want to press charges. Furthermore, according to Waterhouse, Nora told Matthew he was not considered adoptable because he wanted to maintain a relationship with his mother, and when the K.'s adopted Zohn, Matthew would have to go to another foster home. Waterhouse was also concerned that the K.'s expectations for financial help from the AAP, expressed in an affidavit filed in the ongoing litigation, were excessive.
After reading Waterhouse's report, the K.'s filed a motion under section 388 to secure the return of Matthew and Zohn from respite care, explaining their twins had been born healthy on April 7 and there was no reason to keep the boys out of their home. At the hearing, the K.'s objected to the admission of the social worker's reports unless they were permitted to cross-examine the preparer. But the court refused to allow cross-examination, citing California Rules of Court, rule 1432(f)[2] which permits section 388 motions to be heard without testimony at the discretion of the court. The court did, however, admit a lengthy letter from Nora, which attempted to contest or explain many of the representations made in Waterhouse's April 17th report and justify their actions with respect to Matthew and Zohn.
The court also admitted, over the K.'s objection, SSA reports dated May 18 and June 2. In these reports, prepared by a social worker new to the case, John Mannings, SSA recommended keeping Matthew and Zohn in the respite care home and not returning them to the K.'s. Mannings reported both Nora and Mike had said they wanted to adopt Zohn but not Matthew, and they did not want Matthew returned to their care because of his many problems, his loyalty to his mother, and his "scary" behavior. The boys' current caretakers reported they were doing well, were improving in all areas, and appeared happy. Neither child had mentioned returning to the K.'s; Matthew *273 had expressly stated ne ma not want to return. The foster care certification agency social worker told Mannings at the end of May the K.'s foster home was out of compliance and the boys could not be returned there.
After hearing argument from counsel, the court denied the section 388 motion, finding there had been an insufficient showing of a change of circumstances and there was no existing court order that needed to be changed to serve the minors' best interests.
Shortly thereafter, the birth mother filed a petition under section 388 seeking Matthew and Zohn's return to her custody, which was scheduled to be heard on the same day as the second permanency hearing, June 15. SSA filed an update report that day, again detailing the problems with the K.'s and recommending a continuation of long-term foster care and increased visitation for the birth mother. The birth mother, SSA and the minors' counsel stipulated to SSA's recommendation, and the section 388 petition was taken off calendar. The K.'s counsel waived his appearance for the permanency hearing after being informed of the stipulation, but he was unaware of the update report and did not receive it until he came into the courtroom after lunch. At that point, he attempted to change his waiver of appearance and requested to cross-examine the preparer of the report. The K.'s counsel explained, "I checked in ... at 9 o'clock as normal. In this courtroom, I'm not permitted to remain... while other cases are being heard...." He was unaware of both the 10:00 a.m. call and the 11:00 a.m. call and did not go back into the courtroom until someone came and got him, at which point he waived his appearance.
The court denied as untimely the K.'s counsel's request to change his waiver of appearance. "You didn't look [for the update report]. You chose not to be here at all. In view of your earlier waiver ... of your appearance and your client's appearance, and also your apparent agreement with [the recommendation for long-term foster care], ... your afternoon appearance is disingenuous, at best...." The court admitted all SSA's reports into evidence and made orders in conformity with the stipulation.
The denial of the K.'s section 388 motion
When ruling on the K.'s section 388 motion seeking to have Matthew and Zohn returned to them, the trial court suggested the motion was not well taken because it was not seeking to change a court-ordered placement. This suggestion is incorrect. The placement order here vested custody in SSA with discretion to select a suitable placement. The K.'s challenge to SSA's placement decision, i.e., to leave the boys in respite care, was properly brought under section 388. (In re Cynthia C. (1997) 58 Cal.App.4th 1479, 1489-1490, fn. 8, 69 Cal.Rptr.2d 1.) For that challenge to be successful, they needed to prove, by a preponderance of the evidence, that circumstances had changed so as to make a change of placement in the best interests of the boys. (In re Stephanie M. (1994) 7 Cal.4th 295, 320, 27 Cal.Rptr.2d 595, 867 P.2d 706.)
The K.'s claim they met this burden of proof by showing there was no longer a need for respite care because the previous medical crisis had been resolved. And the best interests of the boys would clearly be served by their return, the K.'s argue, because they thrived under the K.'s good care for almost three years. SSA, on the other hand, points to all the problems that surfaced in the social services reports of April, May, and June as justification for denial of the motion. But the K.'s contend these reports were inadmissible at the hearing on their motion because the trial court did not allow them to crossexamine the social worker. We agree.
The parties to dependency proceedings have a due process right, confirmed by court rule, to confront and cross-examine witnesses. Rule 1412(j), which governs the conduct of all proceedings, directs the juvenile court to advise "the child, parent, and guardian ... of the following rights: ... [¶] (2) The right to confront and cross-examine the persons who prepared reports or documents submitted to the court by the petitioner, and the witnesses called to testify at the hearing; [¶] (3) The right to use the process of the court to bring in witnesses; [¶] (4) The right to present evidence to the court. [¶] *274 The child, parent or guardian, and their attorneys have the right (i) to receive probation officer or social worker reports, and (ii) to inspect the documents used by the preparer of the report." (See also In re Malinda S. (1990) 51 Cal.3d 368, 382, 272 Cal.Rptr. 787, 795 P.2d 1244; In re Dolly D. (1995) 41 Cal.App.4th 440, 444, 48 Cal.Rptr.2d 691.)[3]
To determine whether the court's denial of cross-examination to the K.'s rendered the social services reports inadmissible, we must decide first, whether the right to confrontation applies to de facto parents and second, whether the right applies in the context of a section 388 hearing.
Attaining the status of de facto parents allowed the K.'s to participate "as parties" in hearings by being present and represented by counsel and by presenting evidence. (Rule 1412(e).) As such, they are entitled to the same procedural rights as natural parents. "Although ... de facto parents do not have all the substantive rights and preferences of legal parents or guardians, they have been afforded procedural rights in order to `assert and protect their own interest in the companionship, care, custody and management of the child` [citation], and to `ensure that all legitimate views, evidence, and interests are considered' by the juvenile court in dependency proceedings. [Citation.]" (In re Jonique W. (1994) 26 Cal.App.4th 685, 693, 31 Cal. Rptr.2d 601.) The Jonique W. court found a denial of due process where the de facto parent was not permitted to contest the removal of dependent children from her custody at the hearing on a supplemental petition. (Id. at pp. 690, 694, 31 Cal.Rptr.2d 601. See also Katzoff v. Superior Court (1976) 54 Cal.App.3d 1079, 127 Cal.Rptr. 178 [reversal of juvenile court's refusal to allow de facto parents to present evidence at review hearing contradicting social services reports recommending removal of child from their custody]; In re Cynthia C, supra, 58 Cal.App.4th at pp. 1490-1491, 69 Cal.Rptr.2d 1 [this court approved the de facto mother's exercise of her rights to testify, call witnesses and cross-examine SSA's witnesses at a section 388 hearing].)
Here, however, the juvenile court relied on rule 1432(f) to eliminate testimony altogether. The relevant portion of that rule provides, "With the exception of a request for removal from the home of the parent or guardian or removal to a more restrictive level of placement, proof [that the child's welfare requires the requested modification] may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court...." (Ibid.) SSA argues, in effect, that the discretion given to the juvenile court by rule 1432(f) overrides the de facto parents' due process right to confront and cross-examine witnesses.
Procedural due process is not absolute. "[O]nce it has been concluded that a due process right exists, we balance ... factors... to decide what process is due. [Citation.] This flexible balancing standard considers (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (In re Malinda S., supra, 51 Cal.3d at p. 383, 272 Cal.Rptr. *275 787, 795 P.2d 1244, fn. omitted, internal quotation marks omitted.)
In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard. "A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses, and hence a failure to provide parents with a copy of the social worker's report, upon which the court will rely in coming to a decision, is a denial of due process." (In re Crystal J. (1993) 12 Cal.App.4th 407, 412-413, 15 Cal.Rptr.2d 613.) In the context of this section 388 hearing, we must balance the K.'s interest as de facto parents in regaining custody of the boys and in telling their side of the story about what they believe is the best interest of the boys against the government's interest in serving the best interests of the boys by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings.
We conclude the circumstances here required the juvenile court to conduct a full hearing rather than limiting it to declarations under the court rules. There is no question that the K.'s were denied an opportunity to be heard. The letter written by Nora, which the court accepted into evidence, did address the April 17 report, but not the reports of May 18 or June 2. Furthermore, the court was denied the full benefit of the K.'s perspective as de facto parents. "The de facto parenthood doctrine . . . recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding." (In re Kieshia E. (1993) 6 Cal.4th 68, 77, 23 Cal.Rptr.2d 775, 859 P.2d 1290.) The denial of the K.'s motion rests entirely on the content of the social services reports. Given their three-year history with the boys, including their undisputed care and concern for them, and their allegations that the social workers' statements were inaccurate, the court should not have exercised its discretion under rule 1432(f). That rule is not absolute and does not override due process considerations. (See Los Angeles County Dept. of Children etc. Services v. Superior Court (1998) 63 Cal.App.4th 1299, 1305-1306, 74 Cal.Rptr.2d 618.)

The order selecting long term foster care as the permanent plan
The K.'s also appeal the order at the second permanency hearing, entered pursuant to the parties' stipulation, selecting longterm foster care as the boys' permanent plan. They do not, however, disagree with the order. Their complaint is the admission of the June 15 social services report, which contains information unfavorable to them, without having an opportunity to cross-examine the preparer and thereby including their version of events in the record.
The due process considerations discussed above weigh in differently here. The K.'s counsel waived his appearance and was unable to convince the juvenile court to let him withdraw his waiver. Counsel claimed he was "sandbagged"; the court expressed its opinion that counsel had failed to act responsibly. We cannot (nor do we want to) get involved in a credibility contest between the court and counsel and accordingly we will not disturb its determination. Furthermore, we note that the June 15 report added nothing new of significance to the previous reports.

Disposition
In appeal number G023528, the order denying the K.'s section 388 motion is reversed and the court is directed to hold a new hearing allowing the K.'s to cross-examine the social workers and present evidence. In appeal number G023882, the order selecting long-term foster care as the permanent plan is affirmed.
CROSBY, Acting P.J., and RYLAARSDAM, J., concur.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] All rule references are to the California Rules of Court.
[3] We are aware of the recently filed opinion from the Second District, In re Jeanette V. (1998) 68 Cal.App.4th 811, 80 Cal.Rptr.2d 534, which holds that parties have a statutory right to crossexamination only at the jurisdictional hearing. This case confuses the right to cross-examination, which applies to all hearings, with the admissibility of the social study reports. At the jurisdictional hearing, the social study reports are admissible only if the preparer of the report is available for cross-examination. At subsequent hearings, the reports are admissible without that condition. (Andrea L. v. Superior Court (1998) 64 Cal.App.4th 1377, 1387, fn. 3, 75 Cal. Rptr.2d 851.) The lesser requirement for admissibility of the reports at subsequent hearings does not compromise a party's right to request the presence of the preparer and cross-examine him or her.