114 Cal.Rptr.2d 1 (2001)
93 Cal.App.4th 1400
In re CLIFTON V., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Ajah B., Defendant and Appellant.
No. B148437.
Court of Appeal, Second District, Division Seven.
October 29, 2001.
As Modified November 27, 2001.
Merrill Lee Toole, Monrovia, under appointment by the Court of Appeal, for Appellant.
*2 Lloyd W. Pellman, County Counsel, and Jill Regal, Senior Deputy County Counsel, for Respondent.
JOHNSON, Acting P.J.
In this case we hold the juvenile court erred in refusing to hear live witness testimony at the hearing on appellant's petition for modification pursuant to Welfare and Institutions Code section 388,[1] where the declaration testimony was in conflict and the declarants' credibility was at issue.

FACTS AND PROCEEDINGS BELOW
Appellant Ajah B. ("mother") gave birth to Clifton V. in January 1995, when mother was 15 years old. Respondent Los Angeles County Department of Children and Family Services ("DCFS") detained Clifton in January 1998, pursuant to a petition alleging Clifton's father's whereabouts were unknown and mother had a history of substance abuse, was homeless, and had failed to provide Clifton with the basic necessities of life. The petition also alleged mother had failed to obtain treatment for a medical condition from which Clifton suffered.
Clifton was detained at the home of his maternal grandmother from January 27, 1998 to October 8, 1998. During this time, mother participated in court-ordered counseling and rehabilitation programs, and was granted supervised visitation. Her relationship with Clifton was described as bonded and loving; however, an April 23, 1998, psychological assessment of Clifton stated "Cliff sees his mother approximately twice per month, although the courts have allowed her to visit 3 times per week for 3 hours per visit." On October 19, 1998, Clifton was placed with his paternal grandmother, Ethlyn M. ("grandmother"), because his social worker believed he was being inadequately supervised at his maternal grandmother's home. DCFS reported grandmother provided excellent care for Clifton.
On April 12, 1999, the court terminated the father's reunification services, but extended mother's reunification services for six months. By October 12, 1999, mother was visiting Clifton only once or twice a month, despite the social worker's encouragement to visit more often. Clifton showed attachment to mother, but was very happy in his placement and was "spoiled" by his relatives. The court terminated reunification services for mother and selected long-term foster care as Clifton's permanent plan.
By October 10, 2000, mother was visiting infrequently and grandmother was ready to assume legal guardianship over Clifton. Accordingly, the court set a section 366.26 selection and implementation hearing for January 9, 2001.[2] In its report prepared for the section 366.26 hearing, DCFS reported mother's visits were still inconsistent and sporadic, and recommended the court appoint grandmother as Clifton's legal guardian and terminate jurisdiction. At the hearing on January 9, the court set a contested guardianship hearing for February 7, 2001.
On February 1, 2001, mother filed a petition for modification under section 388.[3] The petition requested Clifton be *3 returned to her care or permitted overnight visits in preparation for being returned to her care. It alleged as changed circumstances: (1) mother had successfully completed all court-ordered programs; (2) mother had been maintaining regular, frequent telephone and in-person contact with Clifton; (3) mother and Clifton shared a strong bond with one another; and (4) mother had an appropriate residence for herself and Clifton and was capable of providing for his medical and dental care, of enrolling him in school, and of meeting all his needs. The petition also alleged Clifton had told mother and his social worker he wanted to live with his mother. The petition requested a hearing "to provide further evidence by way of Clifton's statements that he feels safe in his Mother's presence and wants to return home with her and that such a modification is in his best interests."
The verified petition included a copy of a status review hearing report dated October 12, 1999, which stated in part "Mother has complied with all court orders. Mother has shown a lot of progress and remain [sic] free of drugs and alcohol. However, based upon mother [sic] lack of visitation with Clifton, DCFS must recommend termination of family reunification and of a permanent plan." Because mother's lack of visitation was the key factor in DCFS's recommendation, mother's section 388 petition ultimately focused on whether or not mother was visiting Clifton more frequently, thus constituting "changed circumstances" within the meaning of section 388. The verified section 388 petition included a letter from mother describing her activities with Clifton and their strong bond. It concluded "Whenever Clifton and I are together we enjoy eachother's [sic] company, we have dinner together, we talk over the phone, we do everything from shcoolwork [sic] to just plain running around having fun. We have an excellent relationship and the bond between us has never been broken."
DCFS filed an opposition to the petition on February 7, 2001. On February 22, 2001, DCFS filed a supplemental opposition in which it argued, inter alia, mother had very little contact with Clifton during the previous four years. The supplemental opposition included a declaration from grandmother, in which she directly contradicted the claims made in mother's petition. Grandmother's declaration stated in part: "It is not true that Ajah [B.] has visited Clifton on a regular or frequent basis. It is not true that Ms. [B.] has visited Clifton regularly two to three times a week. It is not true that Ms. [B.] has telephoned Clifton four to five times a week. [¶] 3. Since Clifton has been in my care Ms. [B.] has visited him two times a week on only two or three occasions. The rest of the time she has visited, at most, one time a month but sometimes goes several months without visiting at all. Ms. [B.] telephones Clifton, at the most, once or twice a month. These telephone calls do become more frequent a few weeks before a court date but go back to once or twice monthly after the court date.... 7. It is not true that Ms. [B.] helps Clifton with his homework. It is not true that she cooks for him. When she does visit, I cook for them both so they can share a meal together.... 10. I have not observed a *4 very strong bond between Clifton and his mother. Clifton is more attached to myself [sic] and his paternal aunt than he is to his mother. [¶] 11. I have asked Clifton on more than one occasion if he would rather live with his mother. He has always told me that he wants to continue living with me...."
Mother's petition was heard on February 23, 2001. The court relied solely on the parties' documents and declarations, and refused mother's request to permit live testimony and to cross-examine witnesses. After hearing arguments of counsel, the court determined there had been no change in circumstances since 1998, and it would not be in Clifton's interest to return him to mother or to extend mother's visitation. Accordingly, it denied the petition.
After the hearing on the section 388 petition, the court held the section 366.26 hearing, granted legal guardianship to grandmother, and terminated its jurisdiction. Mother timely appealed.

DISCUSSION

I. THE JUVENILE COURT DENIED MOTHER'S RIGHT TO DUE PROCESS WHEN IT REFUSED TO HEAR LIVE TESTIMONY IN CONNECTION WITH HER SECTION 388 PETITION.

Rule 1432, subdivision (f) of the California Rules of Court provides for a live hearing on a section 388 petition "if ... there is a due process right to confront and cross-examine witnesses. Otherwise, proof may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." The juvenile court relied on this section in refusing to permit live testimony at the hearing in this case. This was error: in In re Matthew P[4] the Court of Appeal held there is just such a due process right where there is a contested hearing with an issue of credibility.
In Matthew P., the court held the juvenile court erred in refusing to hear live testimony in a contested hearing under section 388 and denying the petition of the minor's de facto parents based on the contents of a social services report, which the petitioners contended was inaccurate.[5] The juvenile court, like the court in this case, "relied on rule 1432(f) to eliminate testimony altogether,"[6] and thus refused to permit the de facto parents to cross-examine the social worker who prepared the report.[7] In reversing the juvenile court's order, the Court of Appeal noted "[i]n juvenile dependency litigation, due process focuses on the right to notice and the right to be heard," and held "[a] meaningful hearing requires an opportunity to examine evidence and cross-examination witnesses." Accordingly, it concluded a failure to meet those requirements is "a denial of due process."[8]
The court in Matthew P. rejected the respondent's argument "the discretion given to the juvenile court by rule 1432(f) overrides the ... due process right to confront and cross-examine witnesses."[9] In so holding, it relied in part on rule 1412, *5 subdivision (j), of the California Rules of Court. This rule requires the juvenile court to advise "the child, parent, and guardian ... of the following rights: ... (2) the right to confront and cross-examine the persons who prepared reports or documents submitted to the court by the petitioner, and the witnesses called to testify at the hearing; (3) the right to use the process of the court to bring in witnesses; (4) the right to present evidence to the court." [10] We agree with the court in Matthew P.: Rule 1432, subdivision (f) "is not absolute and does not override due process considerations."[11]
In this case, as in Matthew P., the juvenile court's exercise of discretion under Rule 1432, subdivision (f), deprived mother of her right to due process. There was a clear credibility contest between mother and the paternal grandmother, which the juvenile court resolved adversely to mother based solely on the parties' written submissions and argument of counsel. Under such circumstances, the court should have received mother's oral testimony, and should have permitted her to cross-examine Clifton's grandmother and the social worker who prepared the report upon which the juvenile court relied. Its failure to do so constituted an abuse of discretion.

II. THE JUVENILE COURT'S ERROR WAS NOT HARMLESS.

We cannot agree with DCFS's contention the juvenile court's error was harmless under the applicable standard of "harmless beyond a reasonable doubt."[12] The parties' declarations were in direct conflict with one another, raising the inference either mother or grandmother was lying. Without the benefit of live testimony and cross-examination, the juvenile court was at a great disadvantage in evaluating the parties' credibility. We cannot say what the outcome of a live "swearing contest" would have been, thus we cannot say mother was not harmed by the lack of opportunity to present live testimony and to cross-examine adverse witnesses. This result would be the same even under the more lenient "reasonable probability" standard urged by DCFS.[13] Therefore, we must reverse the order of the juvenile court and remand for a new hearing on mother's section 388 petition, with the parties afforded the opportunity to present live testimony and cross-examine adverse witnesses.

III. THE ORDERS GRANTING GUARDIANSHIP AND TERMINATING JURISDICTION MUST BE VACATED IN LIGHT OF THE ERRONEOUS DENIAL OF MOTHER'S SECTION 388 PETITION.

Mother argues the juvenile court's orders establishing guardianship and terminating jurisdiction must be vacated in light of the juvenile court's erroneous denial of her section 388 petition. We agree.[14] As was the case in In re Hashem H., "the court is instructed to conduct the required hearings in this matter without delay in *6 order to minimize the disruption in the minor's life."[15]

DISPOSITION
The following orders of the juvenile court are vacated:
1. The order denying mother's petition under section 388;
2. The order establishing legal guardianship; and
3. The order terminating jurisdiction.
The matter is remanded to the juvenile court with directions to hold a new hearing on mother's petition under section 388, which hearing is to include live testimony and the right of cross-examination, and, if appropriate after such hearing, to hold a new hearing pursuant to section 366.26.
We concur: WOODS, J. and BOLAND, J.[*]
NOTES
[1] Unless otherwise noted, all further statutory references will be to the Welfare and Institutions Code.
[2] Section 366.26 prescribes the procedure for the termination of parental rights, or establishment of legal guardianship or other long-term placement, following termination of reunification services.
[3] Section 388 provides in pertinent part as follows: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or new evidence, petition the court ... for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and ... shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction. [¶] If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction, the court shall order that a hearing be held...."
[4] In re Matthew P. (1999) 71 Cal.App.4th 841, 84 Cal.Rptr.2d 269 (hereafter "Matthew P.").
[5] Matthew P., supra, 71 Cal.App.4th at p. 851, 84 Cal.Rptr.2d 269.
[6] Matthew P., supra, 71 Cal.App.4th at p. 850, 84 Cal.Rptr.2d 269.
[7] Matthew P., supra, 71 Cal.App.4th at p. 849, 84 Cal.Rptr.2d 269.
[8] Matthew P., supra, 71 Cal.App.4th at p. 851, 84 Cal.Rptr.2d 269 (citations omitted).
[9] Matthew P., supra, 71 Cal.App.4th at p. 850, 84 Cal.Rptr.2d 269.
[10] Matthew P., supra, 71 Cal.App.4th at p. 849, 84 Cal.Rptr.2d 269.
[11] Matthew P., supra, 71 Cal.App.4th at p. 851, 84 Cal.Rptr.2d 269.
[12] See Andrea L. v. Superior Court (1998) 64 Cal.App.4th 1377, 1387, 75 Cal.Rptr.2d 851 ("we confidently conclude, beyond a reasonable doubt, no different result would have been obtained" absent the error).
[13] People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243 (error is harmless if there is no reasonable probability the result would have been different absent the error).
[14] In re Kimberly F. (1997) 56 Cal.App.4th 519, 535-536, 65 Cal.Rptr.2d 495 (order terminating parental rights must be vacated when entered after erroneous denial of section 388 petition); In re Hashem H. (1996) 45 Cal.App.4th 1791, 1801, 53 Cal.Rptr.2d 294 (order establishing legal guardianship must be vacated where juvenile court erroneously failed to conduct hearing on section 388 petition).
[15] In re Hashem H., supra, 45 Cal.App.4th at p. 1801, 53 Cal.Rptr.2d 294.
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.