Filed 8/20/20  In re Baby Girl B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re BABY GIRL B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E074308 |
| Plaintiff and Respondent, | (Super.Ct.No. J279036) |
| v. | OPINION |
| J.S., | |
| Petitioner and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Appellant.

Michelle D. Blakemore, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

Petitioner and appellant J.S. (Aunt) is the sister of Baby Girl B.'s (the Child) mother (Mother). Aunt cared for the Child for nearly 10 months before she voluntarily relinquished the Child after months of vacillating. Aunt appeals from the court's denial of her petition under Welfare and Institutions Code section 388[1] asking to have the Child returned to her care. For the reasons explained below, we affirm.

### FACTS AND PROCEDURE

*Detention – December 2018*

The Child was born three weeks premature in December 2018. Both she and Mother tested positive for methamphetamines. Mother was homeless and did not know who the Child's father was. Mother became combative shortly after giving birth and was placed on a section 5150 psychiatric hold.

Aunt was at the hospital and asked to be assessed for placement when the San Bernardino County Children and Family Services (CFS) social worker arrived. Aunt informed the social worker she was a certified nursing assistant, had two children of her own, and had room in her home for the Child.

On December 18, 2018, CFS filed a section 300 petition alleging under subdivision (b)(1) (failure to protect) that Mother had a substance abuse problem, could not provide the Child with basic necessities, and had untreated mental health issues; CFS alleged under subdivision (j) (abuse of sibling) that Mother had failed to reunify with two previous children in 2014 and 2017.

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise indicated.

2

At the December 19, 2018, detention hearing, the court found a prima facie case to detain the Child and vested CFS with temporary care and placement. CFS placed the Child with Aunt that day. At that time, Aunt indicated she was willing to adopt the Child.

*Jurisdiction and Disposition – January 2019*

At the January 9, 2019, jurisdiction and disposition hearing, the court found true each of the allegations and bypassed services to Mother. The court removed the Child from Mother and placed Child in the care, custody, and control of CFS. In the report prepared for that hearing, CFS noted "the child does not have any significant or immediate needs at this time, however her health and development will need to be closely monitored due to her exposure to drugs in utero."

*Parental Rights Terminated – June 2019*

At the June 26, 2019, section 366.26 hearing, the court terminated Mother's parental rights and set a permanency planning hearing for December 16, 2019.

In the section 366.26 report, CFS noted that Aunt reported that the Child seemed to be slow in her development and was not meeting the same milestones as had Aunt's biological children. The Child was not sitting up or trying to hold her bottle. In February 2019, CFS had sent a referral for Screening, Assessment, Referral and Treatment services, but the service provider told Aunt they do not provide services for children the Child's age. The social worker followed up on the referral but had received no reply by early June. Aunt reported the Child was fussy, jittery, and cried often; the pediatrician

said this could be caused by the drug exposure in utero.  The social worker promised to submit a referral to a neurologist to evaluate the Child.  The record does not indicate the Child ever saw a neurologist.

The report noted Aunt and the Child were developing a mutual attachment, that Aunt stated, "I treat her like my daughter," and Aunt wanted to adopt the Child because "I don't want her to go to a foster home or get adopted by other people."  Aunt lived in a five-bedroom house with a roommate/landlord, the Child, and her own daughters, ages 17 and two.  Aunt worked as a nursing assistant.

*Relinquishment, Section 388 Petition, Status Review – August to December 2019*

CFS filed a status review report on December 11, 2019.  According to the report, Aunt contacted the social worker on August 23 and asked to have the Child removed from her care.  Aunt stated she was exhausted and burnt out from caring by herself for the Child and her own two children.  Aunt contacted the social worker again on August 24 stating she had changed her mind.  Aunt had found a good daycare facility that would allow her to return to work.  Aunt believed this would relieve some of the stress of caring for the Child.  Aunt felt better about keeping the Child because the Child would be receiving therapy and developmental services, and she believed the Child would grow out of her behaviors.  Aunt stated she had been thinking about having the Child removed for the past several months but "just couldn't do it."

On October 22, 2019, during a monthly contact with the Child, Aunt told the social worker she had thought about it and could no longer care for the Child.  It appears

4

that at that time therapy services had only just begun, and regional center paperwork had only recently been completed.  Aunt reported that the Child continued to whine and cry a lot.  Aunt's roommate/landlord refused to be Live Scanned, so Aunt could not continue to live in that house with the Child.  Aunt expressed she had thought she would have more help from family and friends.  Aunt stated it was difficult to relinquish the Child, but she was decided.  Aunt was about to move out of the house and stated she would keep the Child until CFS found another adoptive home.

On October 26, 2019, Aunt called the CFS "after hours" line and asked that someone come to pick up the Child.  According to the report, "the child is constantly screaming and crying; medical doctor did not seem concerned."  Aunt brought the Child in later that evening to relinquish her.  CFS placed the child in a foster home the following day.

Later, Aunt told the social worker she believed she had made a mistake, regretted her decision, and "wants her baby back."  After speaking with a supervisor about whether to hold a child and family meeting, the social worker told Aunt that it would not be in the best interest of the Child to consider re-placing her with Aunt.

On November 26, 2019, Aunt filed a section 388 petition asking for the Child to be placed again in her home.  Aunt stated that the placement would be better for the Child, "[b]ecause I had my niece since birth and my situation has changed for the best of the baby and myself.  I have the support and care I need to care for my niece."  The court

set the hearing on the petition for December 16, 2019, the scheduled permanency planning hearing date.

On December 12, 2019, the new foster parent filed a Judicial Council Form JV-295 de facto parent request. The foster mother attached a letter stating the Child had bonded to her and her family and is now "happy, smart, loving and stabilized in her crying and emotions." The foster mother explained that, while the Child cries and whines a lot, she had been working with the Child and spending one-on-one time together to create a bond and sense of security, and that the "non-stopping crying has ceased." The court set the hearing on the request for December 16.

At the December 16, 2019 hearing, the court heard from counsel and from Aunt. Aunt explained that she loved and missed the Child, and that she had been "going through something" and "needed some assistance." Counsel for the Child asked the court to deny the petition without a hearing because Aunt had frequent changes of heart and was not a stable placement. The court denied Aunt's section 388 petition on the basis that the Child needs a stable placement and permanence, and the incidents in August and October showed that Aunt is not a stable placement. The court denied the foster mother's de facto parent request without prejudice.

## DISCUSSION

Aunt argues the trial court abused its discretion when it denied her section 388 petition without an evidentiary hearing. For the reasons stated below, we find no abuse of discretion.

6

When the court has ordered the child services agency vested with placement decisions, as it did here at the detention and jurisdiction/disposition hearings, a section 388 petition is the proper method for requesting the re-placement of a dependent child, even with no prior court order removing placement. (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 848-849.)

"Section 388 permits '[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court' to petition 'for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court' on grounds of 'change of circumstance or new evidence.' (§ 388, subd. (a).) 'If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . .' [Citation.] Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing. [Citations.] In order to avoid summary denial, the petitioner must make a 'prima facie' showing of 'facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' [Citations.]" (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.)

There are two requirements for a prima facie showing: the petitioner must show that (1) there is a genuine change of circumstances or new evidence, and (2) a modification of a previous order would be in the best interests of the child. (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) We review a summary denial of a hearing on a modification petition for abuse of discretion. (*In re A.S.* (2009) 180 Cal.App.4th

7

351, 358.) "Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*Ibid.*)

The juvenile court's decision to summarily deny Aunt's section 388 petition was not arbitrary, capricious, or patently absurd. Although Aunt argues here that her difficulties were caused by lack of services and respite care, she did not make a prima facie showing in her petition or in court that a genuine change in circumstances had occurred. On the Judicial Council Form JV-180 "Request to Change Court Order," Aunt left blank the section asking for new information or circumstances. In the section asking why the proposed change would be better for the Child, Aunt alleged that she now had "the support and care I need to care for my niece," without describing the nature or source of that support and care and, more important, any reason to suggest that it would be stable for the foreseeable future. At the hearing on December 16, 2019, Aunt told the court that she deserved a second chance, stating vaguely that she had been "going through something" and "needed some assistance." Again, although she assured the court that "if I had that chance to bring her back home, it wouldn't be nothing like this ever again," she provided no facts that could buttress or provide context for her assertions, and thus failed to support a prima facie case that the circumstances genuinely had changed.

Neither did Aunt make a prima facie case that returning the Child to her care would be in the Child's best interest. In the petition, Aunt alleged: "Because I had my

8

niece since birth and my situation has changed for the best of the baby and myself. I have the support and care I need to care for my niece." At the hearing on her petition, Aunt stressed that the social workers had never faulted her for how she cared for the Child, that she had been a good parent, and that she loved the Child and wanted her back. However, this was not a prima facie case that returning the Child to her would be in the Child's best interest, given the evidence that she told the social worker in August 2019 that she wanted to relinquish the Child and had been thinking about it for a while, that she again told the social worker on October 22 that she wanted to relinquish the Child but could keep her until CFS found an adoptive home, and that just four days later she dropped off the Child with CFS, stating that the Child was "constantly screaming and crying." In contrast, the evidence about the child's current placement was that the foster mother's one-on-one attention had ameliorated the Child's previously constant crying and that the Child was happy and acting like "a normal 1 year old."

We commend Aunt for stepping up to care for her sister's child, both at birth and thereafter. However, we cannot find that the court abused its discretion when it denied her section 388 petition, as Aunt provided no facts to support her allegation of a change of circumstance since she relinquished the child, and the court's finding that she had not shown she could provide a stable placement and permanence was not an unreasonable basis for concluding that re-placing the Child with Aunt would not be in the Child's best interest.

9

**DISPOSITION**

The court's order denying Aunt's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.