Filed 12/22/21; Certified for Publication 1/12/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | C092928 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20200000110) |
| Plaintiff and Respondent, | |
| v. | |
| S.V., | |
| Defendant and Appellant. | |

The juvenile court exercised dependency jurisdiction over minor A.V. under Welfare and Institutions Code section 300[1] and removed her from the custody of her mother, S.V. (mother).  Mother challenges the sufficiency of the evidence supporting the

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

1

court's exercise of jurisdiction as well as the resulting disposition order. She argues in the alternative that the court denied her due process right to be heard at the jurisdictional hearing when it made the challenged findings in her absence. We agree with mother's latter contention and shall reverse without reaching her sufficiency of the evidence challenge.

BACKGROUND

A.    *Family History*

Mother has several children, including N.V., J.V., and A.V. The whereabouts of A.V.'s father, H.B. (father), are unknown. The family has a long history with Child Protective Services (CPS). As of April 2020, the family had been referred to CPS over 30 times. During previous contacts, the family was offered various mental health and safety net services, including WRAP services.

A.V. has severe mental health issues, which cause her to be aggressive to mother and her siblings. She often reports being hit or abused by mother. Subsequent investigations, however, have shown that A.V. is actually the aggressor who physically assaults mother.

On March 6, 2020,[2] respondent San Joaquin County Human Services Agency (Agency) investigated a referral from a reporting party that assessed A.V. at St. Joseph's hospital. During the assessment, A.V. claimed her mother hit her with a spatula all over her body, spanked her, threw toys at her, and had previously hit her with a hanger. No marks or bruises were visible on A.V.'s body. It was also reported that A.V. had extreme violent behavior, had been diagnosed with adjusting disorder, and had been physically aggressive with mother in the past.

---

[2]    Further date references are to 2020, unless otherwise indicated.

B.    *Dependency Petition*

In April, the Agency filed a section 300 petition on behalf of A.V. alleging that A.V. had suffered, or there was a substantial risk that she would suffer, serious physical harm or illness as a result of the failure or inability of her parent to supervise or protect her adequately (§ 300, subd. (b)(1)), and that A.V. had been left without any provision for support as the whereabouts of her father were unknown and reasonable efforts to locate him had been unsuccessful (§ 300, subd. (g)).

According to the petition, at a Child and Family Team meeting on March 26, out of home care was recommended for A.V. due to mother no longer being able to provide the necessary parenting and care for A.V.'s significant behavioral and mental health needs. A.V. had had numerous mental health interventions, including being admitted to San Joaquin County's Behavioral Health Center twice in an eight-day period with law enforcement escort due to her aggressive behaviors and a two-week stay at St. Helena Psychiatric Hospital after making claims of increased aggression towards her mother. A.V. had been diagnosed with mood regulation disorder, posttraumatic stress disorder and oppositional defiant disorder, and had been prescribed multiple psychotropic medications, including Latuda and Clonidine. Despite participating in Therapeutic Behavioral Services through Aspiranet and psychiatric care through Children's Youth Services, she continued to require multiple mental health crisis contacts each month, with law enforcement escort, and continued to accuse mother of physically abusing her even though A.V.'s siblings reported that A.V. was actually the one who hit mother with objects such as spatulas and her hands. A.V. "act[ed] up," got "wild," and sometimes slept up to 20 hours a day, with frequent verbal and physical outbursts.

The petition further alleged that mother struggled to provide adequate and necessary care for A.V.'s significant mental health needs even though A.V. received extensive in-home services through Aspiranet. The Agency alleged that, according to

3

several of A.V.'s mental health providers, mother did not always follow through with protocol or directives, she had trouble staying on task, and attempted to override the plans for A.V. recommended by Aspiranet providers.  Mental health staff expressed concerns that mother contributed to the escalation of A.V.'s problematic behaviors and had trouble providing A.V. with space when A.V. began to escalate.  Mother stated that she could not " 'parent on the minor's level,' " but stated she was willing to accept help from service providers even if it makes her " 'look bad' "; at the time, A.V. was temporarily residing in the maternal grandmother's house.  The petition alleged mother admitted to experiencing anxiety herself, and that the whereabouts of A.V.'s father remained unknown.

At a hearing on April 2, the juvenile court found a prima facie case that A.V. came within section 300 and ordered her detained outside mother's home.  The court further authorized a group home placement for A.V.  The court set a jurisdictional hearing in May.  Due to the COVID-19 pandemic, on the court's own motion, the jurisdiction hearing was later continued to June 11.

At the June 11 hearing, the Agency requested a continuance to file an amended petition.  The juvenile court continued the jurisdiction hearing to July 2.

C.     *First Amended Petition*

On June 30, the Agency filed a first amended petition, adding an allegation under section 300, subdivision (c) that A.V. was suffering, or was at substantial risk of suffering, serious emotional damage evidence by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others.  The added allegation contained nearly identical language as previously alleged under subdivision (b)(1).

4

D.    *Jurisdiction*

At the July 2 jurisdiction hearing, where mother was present, the court continued the hearing to July 16, after mother's counsel requested that the court appoint mother a guardian ad litem.  The court sustained the petition as to father, who did not appear.

On the afternoon of July 15, the day before the continued jurisdiction hearing, mother met with the assigned social worker to discuss the proposed case plan.  During the meeting, mother informed the social worker that her infant son was sick with a fever, and she was concerned he might have COVID-19.  The child's pediatrician apparently recommended that mother take the child to get tested, although mother was unsure if she wanted to do that.  The social worker advised mother to follow the pediatrician's advice.  Mother also expressed concerns about not being able to attend the jurisdiction hearing that was scheduled for the next day given her son's condition.  The social worker instructed mother to reach out to her attorney for legal advice about the hearing.  The social worker requested that mother contact her attorney about whether she would be present at the jurisdiction hearing, and mother agreed to call her counsel.

On the morning of July 16, the juvenile court held the jurisdiction hearing.  Mother was not present in court and her counsel informed the court that she had not had an opportunity to speak with her that morning.  Counsel noted that mother desired changes to the petition and wanted to set the matter for a contested jurisdictional hearing.  Mother's guardian ad litem told the court she had met with mother and did not see any need for her continued appointment.  During the hearing, the social worker did not apprise the court of her meeting with mother the previous day when they discussed mother potentially missing the hearing due to her child's fever and COVID-19 concerns.

The juvenile court found there was no good cause to continue the matter, and that mother waived her rights by her nonappearance at the hearing.  The court further found

5

that there was a factual basis for the allegations in the petition, that the allegations were true, and that A.V. came within section 300. The court set the matter for disposition

E.       *Motion to Set Aside Jurisdictional Findings*

Five days after the jurisdictional hearing, mother's counsel advised the court at a miscellaneous hearing regarding guardian ad litem issues that mother had left her a voice message the day before the jurisdiction hearing and said her baby had a fever, although she did not get the message before the hearing. She requested the court "withdraw the default" as to jurisdiction. The court requested a written motion, saying it would not consider an oral motion.

On August 12, mother filed a written motion requesting the juvenile court set aside the July 16 default regarding jurisdiction and allow mother to litigate the jurisdictional allegations at a contested hearing. Mother's counsel explained that after business hours on July 15, the day before the jurisdictional hearing, mother had left her two voice messages. The first message was not detailed, and counsel did not return mother's call before leaving the office at 6:30 p.m. as she expected to see her at the jurisdictional hearing the next day.

After mother failed to appear at the jurisdictional hearing, mother's counsel checked her voice messages again after speaking with mother's guardian ad litem, and counsel learned that mother had left her a detailed message at 6:38 p.m. on July 15, explaining that her child was sick with a fever, that she had discussed taking the child to the emergency room with the doctor, but over fears of being exposed to COVID-19, it was determined that they would set a teledoctor appointment for 9:30 a.m. on July 16 to evaluate the child's health, and requesting that the jurisdictional hearing be continued. Mother's second message also noted that she had spoken earlier in the day with the social worker and that she was trying to follow the social worker's advice to contact counsel.

6

Mother's counsel stated in the motion that had she received mother's second voice message prior to the jurisdictional hearing, that she would have advised mother to follow guidance from the CDC, California, and San Joaquin County to not attend the court appearance to avoid potentially exposing persons at the courthouse to COVID-19.

Attached to the motion were copies of mother's phone records showing the various phone calls she made to the doctor as well as the social worker before and after the jurisdiction hearing, as well as medical records regarding her child's condition. The attachments included a text message mother sent the social worker around 8:00 p.m. on July 15, the night before the jurisdiction hearing, that explained she had been unable to get in touch with her attorney and requested that the social worker advocate with either the judge or her counsel to request a continuance of the jurisdiction hearing given her child's illness.

On August 19, the Agency filed a response to mother's request to set aside the jurisdictional findings. The Agency opposed the request, arguing that it was not the social worker's responsibility to inform the court that mother might miss the hearing over health concerns for her younger child. The Agency argued mother should have done more to contact her attorney and let her know she was unable to attend the jurisdictional hearing.

F.     *Denial of Motion to Set Aside Jurisdictional Findings and Disposition*

In an August 2020 disposition report, the Agency recommended services for mother but not father. According to the report, A.V. was living in a short-term residential treatment facility where her "severe" mental health needs required "significant monitoring and stabilization." This allowed her needs to be met in one centralized location. Because A.V.'s mental health needs were so extensive, a relative placement was not considered at that time.

7

Due to COVID-19, mother and A.V. visited biweekly via video calls. Both mother and A.V. wished to reunite and live together. Sometimes however, mother was still a trigger for A.V., and A.V.'s behavior worsened following visitation. According to the report, mother needed to develop an understanding of how her reactions to A.V. either triggered her or helped to deescalate her behaviors. Therapeutic visitation would be arranged to "monitor and strengthen the relationship" between mother and A.V.

The court considered mother's motion to set aside the default jurisdictional findings at a hearing on August 27. Mother's counsel argued that the social worker had a duty to at least inform the court regarding her conversations with mother about potentially missing the jurisdictional hearing due to concerns over her infant child's health, especially given the COVID-19 pandemic, even if she did not have a duty to advocate for a continuance on mother's behalf. Counsel argued that mother had kept the social worker apprised of the situation and tried to contact counsel, although it was after work hours. The Agency disputed what exactly mother told the social worker at their in person meeting regarding the infant's health, and reiterated its position that the social worker had no duty to request a continuance on mother's behalf.

After considering the parties' arguments, the court denied the motion, finding that mother chose not to go to the emergency room and instead made a doctor's appointment for her sick child during the time set for the jurisdictional hearing. Had mother really been concerned for her child's health, the court surmised, she would have immediately contacted her attorney and taken the child to the emergency room. Although the court acknowledged ongoing concerns related to the COVID-19 pandemic, the court found that at "four months into it, it has been addressed." The court therefore found an insufficient basis to set aside the jurisdictional findings made in mother's absence. Although information from the social worker would have been helpful, the court stated there was no guarantee it would have granted mother a continuance.

8

After denying mother's motion, the court set the matter for a dispositional hearing as to mother on September 3. At the Agency's request, the court proceeded on disposition as to father, declaring A.V. a dependent of the court and removing her from mother's home. The court bypassed father for reunification services.

At the September 3 disposition hearing as to mother, the court again ordered A.V. a dependent of the court, found clear and convincing evidence the child's custody had to be taken from the home, ordered that mother be given services, and incorporated the other recommendations of the social worker into the court's findings and orders. Mother timely appealed.

## DISCUSSION

Mother contends insufficient evidence supports the juvenile court's jurisdictional findings, or, in the alternative, that the court denied her due process by declining to set aside the jurisdictional findings made in her absence because, in her view, good cause existed to excuse her absence from court. We conclude good cause existed to excuse mother's absence from the jurisdictional hearing, and that the court erred in denying her motion to set aside the findings.

" 'Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood.' " (*In re Angelia P.* (1981) 28 Cal.3d 908, 916.) Impairment of this fundamental right must strictly adhere to procedural due process. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412.)

In juvenile dependency, "[d]ue process includes the right to be heard, adduce testimony from witnesses, and to cross-examine and confront witnesses." (*In re Armando L.* (2016) 1 Cal.App.5th 606, 620); specifically, due process "focuses on [a parent's] right to notice and the right to be heard" before a child is removed from his or her care. (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 851.) "When a parent is absent without good cause at a properly noticed hearing," however, "the court is entitled to

9

proceed in the parent's absence." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131.) Ordinarily, a parent's failure to appear will not constitute the good cause necessary to justify a continuance because substantial importance is attached to the child's need to promptly resolve the dependency matter. (*Id.* at pp. 1131-1132, citing Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2005 ed.) § 2.104[5], p. 2-169, citing § 352, subd. (a).) Thus, "[a]n unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend," and the juvenile court "may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present." (*In re Vanessa M.,* at p. 1132, original italics.)

In the context of the jurisdictional hearing here, we must balance mother's desire to retain custody of A.V. and to counter the allegations of the petition against the government's goal of serving the child's best interests by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings. (*In re Vanessa M., supra*, 138 Cal.App.4th at pp. 1129-1130.) After considering the totality of the circumstances, including the backdrop of the relatively new COVID-19 pandemic at the time of the hearing,[3] we conclude mother set forth good cause for her absence from the jurisdictional hearing. While the juvenile court may have been justified in initially proceeding in her absence without any explanation for her failure to appear (*id.* at p. 1131), the court subsequently erred in denying her motion to set aside the jurisdictional findings once mother provided sufficient evidence of a valid medical excuse for her nonappearance. (§ 385; *Nickolas F. v. Superior Court* (2006)

---

[3]     We grant mother's request to take judicial notice of official guidance from the Centers for Disease Control and Prevention (CDC) that persons caring for someone who has symptoms of COVID-19, which includes fever, to stay home except to get medical care. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

144 Cal.App.4th 92, 98 [under certain circumstances, juvenile court may reconsider prior interim orders when necessary to prevent a miscarriage of justice].)

The record shows that the day before the scheduled jurisdiction hearing, mother met with the assigned social worker to discuss the proposed case plan, and she informed the social worker that her younger child was sick with a fever and she was worried that he may have COVID-19. She also expressed concerns about being unable to attend the jurisdiction hearing the next day because of her child's illness. Given the COVID-19 pandemic, the baby's pediatrician had recommended that mother get the child tested. The social worker told mother to follow the pediatrician's recommendation, and also told her to contact her attorney for legal advice about whether to attend the jurisdiction hearing.

Mother did in fact call her counsel two times the night before the hearing as instructed by the social worker. Although the first message was not detailed and counsel did not return her call, the second message, which counsel did not listen to until after the hearing, alerted counsel that mother would not be able to attend the hearing in light of her baby's health-related issues. While it would have undoubtedly been more prudent to call counsel during business hours, it appears mother's counsel was in a hearing all afternoon, making it unlikely she would have been able to take mother's call in any event. This is not a case, then, when mother simply did not show up for the hearing without any explanation.

Not only did mother try to contact her attorney twice before the scheduled hearing, but she also texted the social worker, albeit after-hours, asking that the social worker request a continuance given her baby's ill health and the COVID-19 pandemic that, at the time, was relatively new. These phone calls and text messages again show mother did attempt to notify the parties and counsel that she could not attend the jurisdiction hearing.

And although we agree that the social worker did not have a duty to advocate for a continuance on mother's behalf as the Agency argued below, we find it troubling that the

11

social worker did not apprise the court of her conversation with mother the previous day when mother did not show up for the jurisdiction hearing and both her counsel and her guardian ad litem expressed surprise that she was not there. The social worker could have easily mentioned the conversation, at least to alert the parties and the court that there might be a reason for mother's absence. Under such circumstances, the court could have taken a brief recess to allow mother's counsel to contact her to clarify the reason for her absence. Such a minimal procedural step, we believe, comports with the juvenile law's goal of family preservation whenever possible (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596), and would not have unnecessarily delayed the proceedings to A.V.'s detriment.

Based on the totality of the circumstances, especially when considered against the backdrop of the new COVID-19 pandemic and the guidance to stay home when sick or caring for someone who is sick or may be sick with COVID-19, we believe mother established sufficient good cause for her absence from the jurisdictional hearing. Because mother's counsel informed the court at the jurisdictional hearing that mother desired changes to the petition and wanted to set the matter for a contested jurisdictional hearing, we cannot conclude the error was harmless beyond a reasonable doubt. The juvenile court found there was a factual basis for the allegations in the petition in mother's absence, and yet never considered, let alone admitted, the detention/jurisdiction report at the hearing and no witnesses testified at the hearing.

Mother is entitled to challenge the basis for jurisdiction in a contested jurisdictional hearing. Given our conclusion, we do not reach mother's sufficiency of the evidence challenge to the jurisdictional findings made in her absence.

DISPOSITION

The jurisdiction and disposition orders as to mother are reversed, and the matter is remanded to the juvenile court to hold a contested jurisdictional hearing.

\s\
BLEASE, Acting P. J.

We concur:

\s\
MAURO, J.

\s\
RENNER, J.

13

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | C092928 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.V.,<br><br>Defendant and Appellant. | (Super. Ct. No. STKJDDP20200000110) |

     APPEAL from a judgment of the Superior Court of San Joaquin County, Anthony P. Lucaccini, Judge. Reversed with directions.

     Katherine Marie Curtis for Defendant and Appellant.

     Mark Gabriel Rodriguez Doronio for Plaintiff and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on December 22, 2021, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered

BY THE COURT:


_____\s_____,
BLEASE, Acting P.J.


_____\s_____,
MAURO, J.


_____\s_____,
RENNER, J.

2