[No. A131039. First Dist., Div. Two. Dec. 12, 2011.]

In re DAMION B. et al., Persons Coming Under the Juvenile Court Law.
SAN MATEO COUNTY HUMAN SERVICES AGENCY, Plaintiff and
Respondent, v.
JUANITA I., Defendant;
LINDSAY G. et al., Movants and Appellants.

COUNSEL

Amy Z. Tobin, under appointment by the Court of Appeal, for Movants and Appellants.

John C. Beiers, County Counsel, and Peter K. Finck, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**RICHMAN, J.**—De facto parents occupy a grey zone in dependency proceedings. They are not parties in the strict and pure sense of that term, but they are afforded many of the same privileges and opportunities. The sole issue presented here is whether it was prejudicial error for the juvenile court to deny the request of the de facto parents of twin boys the opportunity to call and cross-examine witnesses at an 18-month review hearing where the court would decide whether to return the twins to their mother. In the distinct circumstances confronting the juvenile court, we conclude there is no basis for reversal.

## BACKGROUND

The nature of the issue we must address does not require an extensive recapitulation of the historical details of the entire dependency. The salient background can be reduced to the following:

The minors, Damion and Dominick, are twins, born to parents with pronounced substance abuse problems. Dominick was born with a cleft lip and palate, and was later diagnosed with cerebral palsy. Virtually from their premature birth in June 2009, the minors were on the radar of the San Mateo County Human Services Agency (Agency). Very soon after their birth, the minors were detained and placed in foster care. The minors were declared dependents in August 2009.

By the time of the six-month review, both parents were in residential treatment programs. In December 2009, the minors were placed with Lindsay and Jonathan G. (appellants), who were also caring for a sibling of the minors.[1] In September 2010, one month after the 12-month review was held, the juvenile court granted appellants' request to be declared de facto parents.

---

[1] This older child is not involved on this appeal. However, it does appear that custody of this child was restored to the mother more than six months prior to the juvenile court ruling that she should also have custody of Damion and Dominick, and that the mother's ability to reunify

The 18-month review hearing was set for December 20, 2010. By this time, the mother had completed the residential treatment program and had made such significant progress with her reunification plan that the Agency recommended that the minors should be restored to her custody. In response, appellants submitted a "Caregiver Information Form" for each minor in which appellants opposed the Agency's recommendation, on the ground that mother had insufficient awareness of the minors' needs. Appellants told the Agency social worker they were willing to adopt the minors.

At the December 20 hearing, the court stated it was uncertain "whether or not de facto parents even have standing to object" to the Agency's recommendation and to demand a contested hearing. "But . . . being cautious here, I am going to set this matter for contested hearing January 27th . . . . And I would ask the parties to brief the issue before the court."

The hearing on January 27 opened with the court stating that it had received and considered the parties' supplemental briefing, together with "a caregiver information form regarding Damion . . . filed by de facto parents as well as a caregiver information form on Dominick . . . also filed by de facto parents. The Court will move these documents into evidence. The record should reflect that the Court has read, reviewed, and considered them as evidence." The court further noted that it had read the supplemental brief of the de facto parents "requesting an evidentiary hearing and a request to cross-examine the social worker." After ascertaining from counsel that both parents and the minors agreed with the Agency's recommendation, the court then turned to appellants' counsel:

"[THE COURT]: . . . So why don't I start with Ms. Gomes since this is your request for an evidentiary hearing on behalf of de facto parents. So the record is clear, tell me why you are requesting a hearing; what it is that you intend to demonstrate that has already not been before the Court through the caregiver information forms, which I might add are very detailed. They are beautifully written, and I appreciate the input from de facto parents. It is significant and important. And the Court has read and considered that. I wanted you [appellants] to know that, both of whom are present. Thank you. [¶] Ms. Gomes.

"MS. GOMES: As the brief states, we are requesting the hearing to present evidence to this Court. And I stand on the brief . . . .

"THE COURT: All right.

---

with this older child was clearly a factor in the Agency deciding that the mother could shoulder the responsibility for the two younger brothers.

"MS. GOMES: And the purpose of the hearing is to present evidence and then to cross-examine parties.

"THE COURT: Can you be more specific please? Those are general comments that you are making. Who is it that you intend to call as a witness?

"MS. GOMES: I intend to call Ms. Odle, who was the investigating social worker.

"THE COURT: Yes.

"MS. GOMES: And she amended the petition. There was [an] initial petition, there was a second petition. She amended that. [¶] And the reason she amended it goes directly to the issue or issues that are expressed.

"THE COURT: When you say amended petition, are you referring to the recommendation or the petition?

"MS. GOMES: No, no, the petition. There was a petition at detention. And then there was a subsequent petition. An amended petition for the . . . jurisdiction disposition.

"And Ms. Odle investigated the case.[2] And issues that came up that gave her concerns that mother had not visited the children in the hospital, she had not made the appointment, and the doctors—Dr. Nills and other care providers expressed grave concern that mother was not learning how to care for her special need child [Dominick].

"THE COURT: And when was this? When—how long ago was this?

"MS. GOMES: This was at the jurisdictional phase of the case. [¶] The point that we are making is that the mother has still not participated in her children's medical care and medical need.

"THE COURT: Okay.

"MS. GOMES: And I wanted to establish that through testimony. And—

---

[2] The record shows that social worker Katherine Odle prepared the detention report and the report submitted by the Agency for the combined jurisdictional and dispositional hearing. All of the subsequent reports were prepared by Agency social worker Emily Teiken. Counsel for appellants told the court at a later point in the hearing that they also desired to have Ms. Teiken testify.

"THE COURT: Above and beyond what's already been presented to the Court through the caregiver information forms which detail all of that information?

"MS. GOMES: Your Honor, I would like to have Ms. Odle testify if the hearing is granted. [¶] If Your Honor is denying the right to go to trial on the papers and arguments then we will, you know, follow that. We will accept that and go—and proceed as—you know, with legal procedures. [¶] But we do believe that the de facto parents are entitled to a hearing.

"THE COURT: An evidentiary hearing?

"MS. GOMES: Yes. Under the Rules of Court[, rule] 5.534(e).[3] They are entitled to a hearing by case law. The very reason that the Court [in] *In re B.G.*[4] and its companion cases—[¶] . . . [¶] The very reason that they created the status, de facto parent status was that a de facto parent would have a say, would present evidence to the court that the—they are entitled to be present at hearings. They are parties to hearings.

"THE COURT: And the record should reflect they are present. They have been present. And they have presented evidence to the Court through their caregiver information forms, yes.

"MS. GOMES: And beyond that, they have a right to set hearings. They have a right to an attorney. [¶] How else would they exercise their right as a party if they are not—they are not heard? And they . . . don't have the right to cross-examine.

"THE COURT: So is it your intention to call them as witnesses as well?

"MS. GOMES: If I need to call them as witnesses. Your Honor—

---

[3] Which provides as follows: "(e) De facto Parents [¶] On a sufficient showing the court may recognize the child's present or previous custodians as de facto parents and grant standing to participate as parties in disposition hearings and any hearing thereafter at which the status of the dependent child is at issue. The de facto parent may [¶] (1) Be present at the hearing; [¶] (2) Be represented by retained counsel or, at the discretion of the court, by appointed counsel; and [¶] Present evidence." (Cal. Rules of Court, rule 5.534(e); subsequent references to a "rule" are to the California Rules of Court.)

[4] *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244] is the fountainhead of the modern development of the de facto parent doctrine. There, our Supreme Court stated: "[A] person who assumes the role of parent, raising the child in his own home, may in time acquire an interest in the 'companionship, care, custody and management' of that child. The interest of the 'de facto parent' is a substantial one, . . . and deserving of legal protection." (*Id.* at pp. 692–693, fns. omitted.)

"THE COURT: I'm asking.

"MS. GOMES: Yeah, I will call—

"THE COURT: Because you are talking about them being heard. I have read everything that they have submitted.

"MS. GOMES: What I—when I say they are, you know, to be heard, is to present evidence so the concerns are heard and, you know, dealt with through the testimony of the social worker. If I need to call them, I will call them.

"THE COURT: Okay. So my understanding is then you wish to . . . directly examine the social worker because you wish to call her as a witness and ask her questions about her recommendation?

"MS. GOMES: That's correct.

"THE COURT: And the petition and the amended petition?

"MS. GOMES: Yes, Your Honor."

The court then heard from counsel for the Agency, the mother, the minors, and the father, all of whom opposed appellants' request. After final argument by appellants, the juvenile court ruled as follows:

"You know, I agree with Ms. Copenhagen [counsel for the mother] that the ultimate holding of . . . *In re Matthew P.*[ (1999)] 71 Cal.App.4th 841 at 850 [84 Cal.Rptr.2d 269] held that de facto parents are entitled to, quote, unquote, the same procedural rights as natural parents since they are entitled to participate as, quote, parties.

"I read the case, and I'm also referring to Seiser and Kumli . . . specifically . . . the section that reads limited rights of de facto parents. I agree with Ms. Copenhagen that the case of *In re Matthew P.*, that was a very specific, unique case that dealt with the de facto parents having the children taken away from them for specific reasons and that those facts do not apply to this case at all.

"And as Kumli and Seiser notes that while the ultimate holding of the *Matthew P.* decision that the de facto parents had a right to a contest[ed] hearing on their petition pursuant to Welfare and Institutions Code section 388 was under the facts of that case correct, its determination however that the de

facto parents have the same procedural rights as natural parents in the court's view was not correct in view of the other cases that have come out since then.

"I think it is well understood that the status of de facto parents does not entitle them to the same rights and responsibilities of parents or guardians. A de facto parent is not the same as a parent and the de facto parent is not given all the rights and preferences of a parent or guardian. They have limited rights in dependency cases. They have the right to be present at a dependency proceeding, to be represented by counsel, and to present evidence.

"That is exactly what the Rule of Court says.[5] And that is exactly what has happened here. The de facto parents are present. They have counsel assigned to them. And they have presented evidence to the court by way of their caretaker information forms.

"And, again, I commend you both for the information that you have provided the Court and your care and concern for the two children at issue. The Court has read and reviewed the documents.

"The record should also reflect that the [Agency] has also considered the information in the documents and has documented that information in their addendum to the Court. So it is the Court's ruling that de facto parents however are not entitled to cross-examine the social worker in this matter.

"So the Court is going to deny your request, Ms. Gomes, to do that."

After additional argument concerning the precise nature of appellants' request (see fn. 2, *ante*), the court adopted the Agency's recommendation restoring the minors' custody to their mother. The de facto parents immediately filed their notice of appeal.

## REVIEW

"The juvenile court in a dispositional hearing must undertake 'a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. [Citation.] The presence of de facto parents will aid the court in that endeavor; the views of such persons who have experienced close day-to-day contact with the child deserve consideration; moreover, an award of custody to such de facto parents is often among the alternate dispositions which the court must evaluate." (*In re B. G., supra*, 11 Cal.3d 679, 693.)

---

[5] The court was closely paraphrasing the language of Seiser and Kumli, California Juvenile Courts Practice and Procedure (2011) section 2.60A[3], page 2-130, and California Rules of Court, rule 5.534(e), quoted at footnote 3, *ante*.

Appellants' position is utterly plain: They have had custody of the minors for more than a year, being intimately involved with every aspect of their lives. Their concern and affection has grown to the point that appellants have expressed their willingness to adopt the minors. Thus, who would be better placed to provide information to the juvenile court about the minors' custody? They were prepared to do so, but were not allowed by the juvenile court.

However, the Agency points out that de facto parents "are not part of any adversarial aspect of a dependency case. . . . While de facto parents have 'standing to participate as parties' (rule 5.534(e)), their role is limited and they do not enjoy the same due process rights as parents." (*In re B.F.* (2010) 190 Cal.App.4th 811, 817 [118 Cal.Rptr.3d 561], fn. omitted.) The treatise cited by the juvenile court makes the same point: "De facto parents are parties," but they are only "entitled to procedural due process to the extent necessary and appropriate for them to assert [their] recognizable interest in the child [citations]." (Seiser & Kumli, Cal. Juvenile Courts Practice & Procedure, *supra*, § 2.60A[3], p. 2-130.)

What happened here is nothing like *Katzoff v. Superior Court* (1976) 54 Cal.App.3d 1079, 1083 [127 Cal.Rptr. 178], where the juvenile court totally refused to consider any evidence from the de facto parents. *In re Matthew P.*, *supra*, 71 Cal.App.4th 841, the other case relied on by appellants, demands fuller attention.

The de facto parents in *Matthew P.* were seeking under Welfare and Institutions Code section 388 to regain custody of two minors. At the hearing on their motion, the de facto parents were not allowed to cross-examine the social worker who prepared several reports. But a more fundamental problem was that the juvenile court "eliminate[d] testimony altogether." (*In re Matthew P., supra*, 71 Cal.App.4th 841, 850.) The Court of Appeal concluded that this absolute exclusion was error:

■ "Procedural due process is not absolute. '[O]nce it has been concluded that a due process right exists, we balance . . . factors . . . to decide what process is due. [Citation.] This flexible balancing standard considers " '(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]' " ' [Citation.]

"In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard. 'A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses, and hence a failure to provide parents with a copy of the social worker's report, upon which the court will rely in coming to a decision, is a denial of due process.' [Citation.] In the context of this section 388 hearing, we must balance the K.'s interest as de facto parents in regaining custody of the boys and in telling their side of the story about what they believe is the best interest of the boys against the government's interest in serving the best interests of the boys by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings.

"We conclude the circumstances here required the juvenile court to conduct a full hearing rather than limiting it to declarations under the court rules. There is no question that the K.'s were denied an opportunity to be heard. The letter written by [one of the de facto parents], which the court accepted into evidence, did address the April 17 report, but not the reports of May 18 or June 2. Furthermore, the court was denied the full benefit of the K.'s perspective as de facto parents. 'The de facto parenthood doctrine . . . recognizes that persons who have provided a child with daily parental concern, affection, and care over substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding.' [Citation.] The denial of the K.'s motion rests entirely on the content of the social services reports. Given their three-year history with the boys, including their undisputed care and concern for them, and their allegations that the social workers' statements were inaccurate, the court should not have exercised its discretion under rule 1432(f).[6] That rule is not absolute and does not override due process considerations. [Citation.]" (*In re Matthew. P., supra*, 71 Cal.App.4th 841, 850–851.)

Appellants were not shut out of the dependency proceeding. As the juvenile court correctly noted, appellants had appointed counsel, they received notice of proceedings, and they did acquaint the court with their opinion as to the minors' placement. Unlike the de facto parents in *Matthew P.*, appellants were not completely precluded from submitting their opinion, in the form of their caregiver information forms. Indeed, although the forms were not submitted under penalty of perjury, the juvenile court effectively treated them as if they were, when it received the forms in evidence. Thus, a facial

---

[6] The Court of Appeal quoted the relevant portion of former rule 1432(f): " 'With the exception of a request for removal from the home of the parent or guardian or removal to a more restrictive level of placement, proof [that the child's welfare requires the requested modification] may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court. . . .' " (*In re Matthew P., supra*, 71 Cal.App.4th 841, 850.) This language disappeared when rule 1432 was reorganized and renumbered as current rule 5.570.

violation of the de facto parent opportunities guaranteed by rule 5.534(e) (quoted at fn. 3, *ante*) is not shown.

The proceedings at the final hearing were quoted at length in order to demonstrate that the juvenile court took considerable pains to ascertain both the nature of appellants' position (opposing returning custody to the mother), and what sort of proof they wanted to submit. Despite the court's persistent inquiries, appellants' counsel never really made anything like a concrete offer of proof that truly explained what actual evidence—that is, live testimony— appellants wanted to present. It is clear that appellants disagreed with the Agency's recommendation that the minors be returned to their mother's custody. It is also clear that the basis of appellants' disagreement was their belief that the mother was inadequately informed about "Damion's basic medical needs" and "Dominick's basic and special medical needs," and was inadequately prepared to deal with those needs. The dates of the "appointments" for her children that the mother had not attended were provided to substantiate appellants' claim. Having appellants take the stand and testify to the same information could appear to the juvenile court as, at best, cumulative to what appellants had already produced with their caregiver information forms. Such a decision would be well within the court's discretionary power to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . necessitate undue consumption of time . . . ." (Evid. Code, § 352.)

Nor was it shown that Agency social worker Odle could add pertinent information to the issue before the court. She was no longer the caseworker at the time of any of the mother's missed appointments. Ms. Odle had no responsibility for any of the reports the court was considering at the hearing. She was likewise not responsible for the Agency's recommendation that the mother regain custody. Appellants made no claim that Ms. Odle was a percipient witness or otherwise had personal knowledge of the missed appointments. In other words, appellants did not establish that Ms. Odle had any relevant information that could be elicited by cross-examining her.

Agency social worker Teiken, who was responsible for the Agency's recommendation, submitted the "addendum" mentioned by the court at the January 27 hearing. The addendum was devoted to responding to appellants' opposition to recommendation. Ms. Teiken did not expressly concede that mother had indeed, up to December 7, 2010, missed the appointments identified by appellants. However, Teiken did advise the court: "The [G.']s are correct that it was outlined in [the mother's] case plan that she was to attend all medical appointments for the children. As noted in the report dated December 20, 2010 this goal was created without fully anticipating how

difficult it would be to provide [the mother] with the necessary services to follow through with the goal. Further, it was not that [the mother] did not comply; it was difficulty in scheduling and providing transportation that was not the fault of [the mother]." Ms. Teiken explained the nature of the "difficulty": "Dominick moved to the home of the [G.']s in San Jose in December 2010 at which time the [G.']s transferred Dominick to a pediatrician near their home and the majority of medical appointments and services for Dominick were then in San Jose. When this occurred, the undersigned should have revised this case plan goal as it was no longer feasible for [the mother] to attend 'all doctors' appointments for Dominick' and still participate in a residential treatment program in San Mateo County which she had been Court ordered to complete." The same reason explained the missed appointments with Damion's doctors. Ms. Teiken also informed the court that the mother "continues to comply with court ordered services," and had attended scheduled meetings since December 6. Knowing this, because they had received a copy of the addendum, appellants did not challenge Ms. Teiken's explanation or specify how cross-examining her would undermine it.

In light of the totality of the circumstances, we cannot conclude, using any standard for prejudice, that the curtailment of appellants' ability to respond more fully to the Agency's recommendation requires reversal.

## DISPOSITION

The order is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 11, 2012, S200018.