Filed 2/10/23 In re J.C. CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | H048081, H048305, H048495, H048740 (Santa Cruz County Super. Ct. No. 19JU00111) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.S., et al., Defendants and Appellants. | |

These appeals result from litigation in which de facto parents contested the reunification and placement of a minor child with his biological father. The Santa Cruz County Human Services Department (the Department) placed minor child J.C. with appellants D.S. and M.S. (collectively appellants) shortly after his birth. The Department then located J.C.'s biological father, O.M.G. (Father), and the juvenile court held proceedings to reunify J.C. with Father. Appellants challenge the order issued by the juvenile court at its 12-month review hearing placing J.C. in Father's custody and commencing family maintenance supervision, as well as the subsequent order dismissing the dependency proceedings. Discerning no error, we affirm the trial court's orders.

# I. Factual and Procedural Background[1]

## A. *Initial Proceedings Regarding J.C.'s Placement*

Shortly after his birth in April 2019, J.C. was removed from his mother's custody because he tested positive for a controlled substance. The Department placed him with appellants, who brought him home from the hospital in May 2019, after he spent several weeks in the neonatal intensive care unit, where he was receiving care. In July 2019, the Department determined that J.C. should be placed with non-related extended family members. Alleging that the Department changed the placement in violation of the United States and California Constitutions protecting appellants from religious discrimination, appellants challenged the placement, first at a grievance hearing, and then in a petition filed in August 2019 pursuant to Welfare and Institutions Code section 388.[2] Appellants requested that the juvenile court rescind the Department's authority to determine J.C.'s placement and determine the appropriate placement for J.C. itself, in his best interest.

---

[1] We ordered appeal numbers H048081, H048305, H048495, and H048740 considered together for purposes of record preparation, briefing, oral argument and disposition. Appellants do not present any arguments regarding their appeal of the seven orders identified in the notice of appeal filed April 24, 2020 (No. H048081). Nor do they address the August 4, 2020 order identified in the notice of appeal filed October 2, 2020 (No. H048495). While appellants ask this court to take action regarding the November 12, 2020 order (No. H048740), they do not include any legal argument related to that order in their brief.

By failing to raise relevant legal arguments regarding the orders identified in appeal numbers H048081, H048495, and H048740, appellants have waived those challenges. (Cal. Rules of Court, rule 8.204(a)(1)(B) [appellant must provide argument and, where possible, citation to legal authority in support of contentions on appeal]; *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216 [issues not raised on appeal may be deemed waived]; *Mecchi v. Picchi* (1966) 245 Cal.App.2d 470, 475 [failure to provide points or authorities attacking the judgment deems appeal from that judgment waived and abandoned].) We confine our factual summary and analysis to the propriety of the May 28, 2020, 12-month review order and subsequent dismissal of the dependency.

[2] Undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In October 2019, the juvenile court held a 13-day hearing on appellants' section 388 petition. During the hearing, the court granted appellants' request for de facto parent status.[3] After hearing evidence and argument, the court granted appellants' request to rescind the Department's authority to determine J.C.'s placement without a court order, finding by clear and convincing evidence that the Department failed to consider J.C.'s best interest when it placed him with the extended family members.[4] Based on the juvenile court's determination that the Department could not fairly conduct a subsequent assessment of J.C.'s best interest, the court performed its own analysis under section 361.3 and determined that J.C.'s best interest was better served by remaining in the care and custody of appellants.[5]

---

[3] " 'De facto parent' means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).)

[4] J.C. and a child of the family members shared the same mother. On December 19, 2019, this court issued an alternative writ of mandate in case number H047338, ordering the juvenile court to conduct a hearing under section 388 to determine whether that child should be recognized as J.C.'s sibling. On January 24, 2020, this court discharged the alternative writ as the juvenile court had complied with the alternative writ by recognizing the sibling relationship and ordering ongoing monthly visitation between J.C. and his sibling.

[5] The issue of what documents appellants were entitled to receive was litigated extensively throughout these proceedings. Initially the juvenile court ordered that appellants should receive "substantive information being provided to [the] Court" in addition to notice of hearings. Over the Department's objection under section 827, the court also ordered the release of various documents to appellants. At a subsequent hearing, in response to renewed objections raised by the Department and J.C.'s counsel, the court ordered that appellants return the majority of the Department's report. Appellants then filed several section 827 petitions which were decided by the court's August 4, 2020 order granting appellants partial access to the juvenile court records, which is before us in case number H048495. Appellants do not address this order in their briefing. In October 2020, Appellants filed a subsequent petition for access to the juvenile case file under section 827. This court issued an opinion (*In re J.C.* (July 7, 2022, H048785) [nonpub. opn.]) in which we affirmed the juvenile court's section 827 order dated November 24, 2020, granting appellants partial access to juvenile court records.

## B. Father's Entry Into the Proceedings

While the section 388 hearing was progressing, in September 2019 Father appeared in the action and alleged that he was J.C.'s father. After holding a hearing, but before issuing its ruling on appellants' August 2019 section 388 petition, the juvenile court granted Father's request and found him to be J.C.'s presumed parent. The court ordered that Father could have supervised visits with J.C., but ruled that the social worker would not have discretion to adjust the frequency, duration, or supervision of the visits. In October 2019, the juvenile court issued dispositional orders removing J.C. from the physical custody of his mother, pursuant to section 361, subdivision (c). The court found that Father had not yet presented an acceptable plan demonstrating that he could protect J.C. from future harm. While the court determined that placement with Father was not appropriate at the time, it also found a "substantial possibility that the child may be returned to physical custody of his parent within [six] months." The court ordered that Father receive reunification services.

At a six-month review hearing in January 2020, the court ordered that J.C. should continue as a dependent of the court placed with appellants.[6] The court found a substantial probability that J.C. would be returned to Father's custody within 12 months and ordered continued reunification services for Father. The juvenile court modified its original order to allow the social worker discretion to adjust the frequency, duration, and supervision of visits, so long as the minimum level of court-ordered visitation was provided. The court determined that Father's "progress toward alleviating or mitigating the causes necessitating placement in foster care has been good."

[6] The juvenile court judge who presided over the case became unavailable and subsequently retired from the court. Thereafter appellants filed a series of disqualification challenges under Code of Civil Procedure sections 170.1 and 170.3 to subsequent judges assigned to hear the case. One recused voluntarily. The court struck all other statements of disqualification on the grounds that appellants, to the extent they were considered parties to the proceedings, failed to state facts that constituted legal grounds for disqualification.

4

In April 2020, the Department notified appellants of its intent to hold a Child and Family Team (CFT) meeting in order to commence a 30-day extended trial visit between J.C. and Father. Appellants opposed the visit, claiming that as a result of the shelter in place orders issued due to the COVID-19 pandemic, such a visit was not in J.C.'s best interest. At the meeting, it was determined that appellants would drop J.C. off for the visit on April 13, 2020. Shortly before the scheduled drop-off time, appellants' counsel notified the Department that appellants did not plan to deliver J.C. as scheduled. After the Department, with the assistance of law enforcement, unsuccessfully tried to retrieve J.C. from appellants, the Department filed a protective custody warrant as to J.C., which the juvenile court issued, placing J.C. with Father for a 30-day visit.[7] Appellants thereafter delivered J.C. to the Department.

On the day J.C.'s visit with Father was first scheduled to begin, appellants filed a section 388 petition to change the previously issued orders that reinstated the Department's authority over Father's visitation with J.C. Appellants alleged the order was issued in violation of previous court orders because the Department did not file a requisite petition and the court acted without any new information or change in the law. Appellants claimed the Department was acting contrary to J.C.'s best interest. They also contended that the court issued the order reinstating the Department's authority over Father's visitation without reviewing the court's records, prior findings, and orders. Appellants alleged that J.C.'s proposed extended visit with Father would be detrimental to the child because of the COVID-19 pandemic, arguing that J.C.'s physician opposed the visit. Appellants also requested an ex parte temporary order restraining the Department from removing J.C. from their home. A day later, appellants filed another

_____

[7] Although the April 15, 2020 protective custody warrant is not part of the record on appeal, other pleadings in the record include information about the warrant and the circumstances surrounding its issuance.

5

section 388 petition asking the court to vacate orders regarding their access to juvenile records and to stay the Department's plan to remove J.C. without a court order.

After the court issued the protective custody warrant, appellants requested an emergency hearing to vacate the warrant and for an expedited hearing on their pending section 388 petitions filed on February 10, 2020, April 13, 2020, and April 14, 2020. The juvenile court denied the requests.

On May 8, 2020, appellants filed a section 388 petition to change the orders issued by the juvenile court removing J.C. from appellants' care, claiming the existence of "significant facts indicating that [J.C.'s] health and safety are at risk, and that the Department has once again acted in a manner detrimental to [J.C.]" Appellants argued that Father had not sufficiently completed his reunification plan to justify reunification with J.C., noting that the COVID-19 pandemic and related shelter-in-place orders had effectively ceased Father's progress, and alleging that Father had not completed required drug rehabilitation, or obtained training or knowledge regarding J.C.'s special needs. Appellants also challenged any plan by the Department that would allow the extended family previously disqualified from having custody of J.C. to provide assistance to Father in caring for J.C. They again alleged that the judicial officers who issued orders removing J.C. from their care and denying their requests for emergency hearings did not properly consider the court record.

In addition to raising concerns about the proceedings leading to J.C.'s removal from their home, appellants contended that they had discovered new facts supporting the conclusion that placing J.C. with Father was not in J.C.'s best interest. Appellants alleged that Father initially told the Department that he did not have family living in California. Appellants asserted that Father had three daughters living in California with whom Father had no contact, and claimed that the Department failed to investigate the circumstances concerning Father's relationship with the children in order to determine any potential risks to J.C.'s health or safety. Appellants claimed, based on a declaration

6

from a private investigator, that after the court ordered J.C. to go with Father, Father held a party in violation of COVID-19-related shelter-in-place orders, placing J.C. at risk. Appellants also questioned whether Father was properly providing for J.C.'s special needs, stating that Father had not obtained prescribed medications for J.C., or taken J.C. to prescribed occupational therapy sessions. Appellants cited publicly available information concerning the criminal histories of Father and his live-in girlfriend, which appellants believed the Department had ignored in its assessment of the child's appropriate placement. Appellants contended that the Department had acted against J.C.'s best interest throughout the pendency of the dependency action.

J.C., through appointed counsel, Father, and the Department opposed appellants' section 388 petition. J.C.'s counsel contended that Father was in full compliance with his case plan, his extended visit with J.C. was authorized under the shelter-in-place orders, J.C. was adjusting well to Father's home, and Father had taken J.C. to a regularly scheduled doctor's visit, at which the doctor reported no health concerns. Father recognized that his introduction into the dependency action was "rough," but argued that he had taken the necessary steps to gain the trust of the Department, not only to obtain an extended visit, but also to obtain their recommendation that J.C. be returned to him permanently.

The Department denied appellants' allegations that it had acted against J.C.'s best interest during the dependency proceedings. Father had notified the Department that his housemate was planning to have a party, and the Department provided instructions to Father as to how he could keep J.C. safe during the event. Although Father missed one of J.C.'s occupational therapy visits, he attended seven others. Father took J.C. to a scheduled medical appointment. The Department was aware of Father's criminal history, and described Father's efforts to remediate that history. Finally, the Department disputed appellants' claims that the extended visit violated the shelter-in-place rules, or that the Department was not acting in J.C.'s best interest.

7

## C. 12-Month Review

On May 13, 2020, the Department sent notice that the court would conduct a 12-month review hearing on May 28, 2020. The proof of service for the notice indicated that the Department served it on appellants' counsel by mail. The Department electronically served a memorandum of points and authorities prior to the hearing, recommending that J.C. be returned to Father.

On May 27, 2020, appellants' counsel contacted the juvenile court judge through email to determine whether the court would hear appellants' May 8, 2020 petition to change orders concurrently with the 12-month review, and explained that appellants planned to have witnesses available for the proceedings. The court responded that "the purpose of tomorrow's court proceedings is to conduct a review of 12-month family reunification. It will not be a motion hearing, and, as such, it is not an evidentiary hearing. Therefore I will not be entertaining testimony from any witnesses who you may have summoned regarding the 388 motion/petitions that you have filed." Appellants' counsel indicated that "we plan to present evidence relevant to the Court's deliberations, pursuant to California Rule of Court, Rule 5.534(a), and other law" that had not been "brought to the Court's attention by any of the other parties." Counsel requested that the court accept "into evidence for its consideration the attached documents prepared by [J.C.'s] treating physician," which included a letter from the doctor and some medical records. Counsel also attached the curriculum vitae of two experts "in child development, child trauma, child detriment, and attachment, as they are relevant [to] the Court's determinations of detriment and [J.C.'s] special needs in the review hearing," indicating that "they may testify in this matter."

At the 12-month review hearing, conducted pursuant to section 366.21, subdivision (f),[8] the court confirmed that it would limit its consideration solely to the 12-

---

[8] The juvenile court is required to hold a permanency hearing no later than 12 months after a child enters foster care, at which, after considering "relevant and

month review and would not hear any of appellants' pending section 388 petitions as appellant had requested. Appellants raised several objections. They first contended that they did not receive proper notice of the summary recommendations for disposition as required by California Rules of Court, rule 5.534(k),[9] and thus asked the court to continue the hearing and require the Department to provide them with the necessary information. The Department confirmed that it served the notice of hearing more than 10 days before the hearing. It also indicated appellants received the "summary recommendation, as well as Pages 7 through 12 of the report," which the Department contended was the information appellants were allowed to receive without obtaining a court order under section 827. Appellants argued they did not receive the summary at least 10 days before the hearing.

Appellants also objected that the juvenile court had not reviewed the entire court file before holding the 12-month review hearing. The court confirmed that it had reviewed a large stack of materials generated since March 2020, as well as the information sent by appellants' counsel via email on May 27, 2020, from J.C.'s physician and the curriculum vitae of appellants' potential expert witnesses. The court indicated that it had reviewed a substantial portion of the 3,500-page trial transcript from the initial hearing at which J.C. was placed with appellants. It noted that the scope of the hearing was Father's reunification with J.C., which necessarily limited appellants' participation in the hearing.

The Department, J.C.'s appointed counsel, and Father asked the court to return J.C. to Father's custody. Appellants asked to present evidence "regarding whether the

admissible evidence, the court shall order the return of the child to the physical custody of their parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (f)(1).)

[9] Subsequent undesignated references to rules of court are to the California Rules of Court.

return [of J.C. to Father] would create a substantial risk of detriment to his safety, protection, physical or emotional well-being." They contended that such evidence would demonstrate that placement with Father would be detrimental to J.C., and asked the court to terminate Father's visitation and reunification services, return J.C. to appellants care, and set a permanency planning hearing so that appellants could adopt J.C.

The juvenile court received an offer of proof from appellants as to what additional evidence they wished to present to the court, which included evidence regarding J.C.'s medical care while Father was participating in the reunification plan, and Father's arrest in March 2020. The court also allowed the Department to respond to the contentions regarding J.C.'s medical care. Citing the fact that the hearing was a "12-month family reunification" hearing, rather than a hearing under section 366.26 or 388, the court indicated it could "constrain what evidence is submitted at this sort of proceeding." The court did not allow appellants to offer any testimonial evidence. The court determined that J.C. would remain in Father's custody and receive family maintenance services.

On May 28, 2020, the juvenile court issued a written 12-month review hearing order, finding by clear and convincing evidence that Father had been provided reasonable services designed to help him overcome the conditions that lead to J.C.'s removal. The court considered the progress Father had made and the extent to which he participated in the provided services, finding that he had made "substantial" progress towards alleviating the causes that necessitated J.C.'s placement in foster care. The court determined that the conditions justifying dependency jurisdiction still existed. However, the court found that return of J.C. to Father would not create a substantial risk of detriment to J.C.'s safety, protection, or well-being. The court placed J.C. in Father's custody, and ordered Father to comply with the previous case plan, and receive services from the Family Maintenance Program.

Appellants timely appealed the May 28, 2020 order.

### D. Post-Review Proceedings

In October 2020, the Department provided written notice to appellants of a previously scheduled family maintenance review hearing (§ 364), at which it would recommend that the court dismiss the dependency action with family court orders giving Father sole legal and physical custody of J.C. On the day of the hearing, appellants filed an objection to the proposed order dismissing the dependency proceeding, in which they claimed that they did not receive adequate notice of the hearing and reiterated their contention that the juvenile court had not considered all of the facts and evidence relating to the placement of J.C. with Father.

At a hearing on November 12, 2020, the juvenile court adopted the Department's recommendation to dismiss the dependency action. J.C.'s counsel agreed with the recommendation. The court found that appellants received proper notice of the hearing, and that "conditions no longer exist which would justify the assumption of jurisdiction under Welfare and Institutions Code Section 300, nor are such conditions likely to exist if supervision is withdrawn." It dismissed J.C. as a dependent of the court, giving Father sole legal and physical custody, and allowing Mother supervised visitation.

Appellants timely filed a notice of appeal from the November 12, 2020 order.

## II. DISCUSSION

### A. Mootness

We commence by addressing the Department's challenges to these related appeals.

The Department first contends that this series of related appeals should be dismissed as moot, as the juvenile court has ordered J.C. returned to Father and dismissed the dependency action. The Department contends that "[a]ppellants are asking this court to do something that effectively results in State removal of J.C. from his father's physical custody without any showing of current risk of serious physical or emotional harm."

" '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events.

11

A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' [Citation.] The question of mootness in a dependency case should be decided on a case-by-case basis. . . ." (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.) Here, the Department does not contend that reversal of the May 2020 order would be without practical effect. If this court determines that appellants have standing to appeal, and that the juvenile court erred in issuing the May 2020 order, reversal would, at minimum, require a new hearing in the juvenile court. We therefore determine that this appeal is not moot.

## B. *Standing*

The Department contends that appellants, as de facto parents, do not have standing to appeal the May 2020 12-month review order. Citing to *In re Vincent M.* (2008) 161 Cal.App.4th 943, appellants argue that they have an interest in the "companionship, care, custody, and management of the child," such that the May 2020 order "injuriously affects" their interests, giving them standing to appeal.

"Any party aggrieved may appeal. . . ." (Code. Civ. Proc., § 902.) A party "is considered 'aggrieved' [when his or her] rights or interests are injuriously affected by the judgment. [Citations.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) Code of Civil Procedure section 902 "is a remedial statute, which should be 'liberally construed,' with 'any doubts resolved in favor of the right to appeal.' [Citation.]" (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540; see also *Vitatech International, Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 804.) This precept applies in dependency proceedings: "standing to appeal is construed liberally, and doubts are resolved in its favor." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

A de facto parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Rule 5.502(10).) As acknowledged by the California Supreme

12

Court, "a person who assumes the role of parent, raising the child in his [or her] own home, may in time acquire an interest in the 'companionship, care, custody and management' of that child. The interest of the 'de facto parent' is a substantial one, recognized by this court . . . and by courts of other jurisdictions and deserving of legal protection. [Citation.]" (*In re B.G.* (1974) 11 Cal.3d 679, 692-693, fns. omitted.)

"The acquisition of de facto parent status does not confer standing to appeal from any juvenile court order; rather, it confers standing to challenge only orders pertaining to those things to which the de facto parent is entitled. [Citation.]" (*In re J.T.* (2011) 195 Cal.App.4th 707, 718.) While appellants did not have a right to continued placement or custody of J.C. at the 12-month review hearing, they did have an interest in the "companionship, care, . . . and management of the child." (*In re B.G.*, *supra*, 11 Cal.3d at p. 693, fn. omitted.) Also, de facto parents have significant procedural rights—the right to be present at hearings, to be represented by retained counsel (and, in the court's discretion, to appointed counsel), and the right to present evidence and be heard. (Rule 5.524(a); *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361.) Appellants had a right to participate in the 12-month review hearing and present evidence to protect their interest. Thus, they have standing to appeal the resulting order, which they contend the trial court issued in violation of their due process rights.

### C. *No Error in the 12-Month Review Order*

Appellants argue that the juvenile court erred when it issued the 12-month review order because it failed to make the findings required by section 366.21, subdivision (f), denied appellants their due process rights, and made orders that are not supported by substantial evidence. From our careful review of the record, we discern no error in the court's decision to return J.C. to Father.

We first note that the underlying purpose of dependency proceedings is to protect the dependent child's welfare and best interest, focusing on the child, not the parent. (*Serena M. v. Superior Court of Fresno County* (2020) 52 Cal.App.5th 659, 672 (*Serena*

13

*M*.).)  However, " '[t]he paramount goal in the initial phase of dependency proceedings is family reunification.'  [Citation.]"  (*Ibid*.)  At a 12-month review hearing under section 366.21, "the court shall determine the permanent plan for the child, which shall include a determination of whether the child will be returned to the child's home and, if so, when . . . .  After considering the relevant and admissible evidence, the court shall order the return of the child to the physical custody of their parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."  (§ 366.21, subd. (f)(1).)

### 1.  *The juvenile court made the required findings.*

Appellants contend the juvenile court failed to make the findings required by section 366.21, subdivision (f)(1) and (2) when it issued the 12-month review order, stating that the "court failed to make any determination regarding whether placement with the father would pose a significant risk of detriment [to J.C.]," and that the court "never made any determination regarding whether the father substantially complied with his reunification plan," and "failed to specify the factual basis for its decision as required by [section 366.21, subd. (f)(2)]."  But while section 366.21, subdivision (f)(2) requires that the juvenile court make certain findings if it *declines* to return a child to a parent, the statute does not set forth express findings the court is obliged to make when it elects to *return* a dependent child to parental custody.

In any event, the record belies appellants' assertions.  The juvenile court expressly found that "[r]eturn of the child to the father would not create a substantial risk of detriment to the safety, protection or physical or emotional well-being of the child."  Section 366.21, subdivision (f) does not require the court to make findings about Father's compliance with his reunification plan, but the court indicated that Father was "offered and provided reasonable services, which were designed to aid him to overcome the problems that led to the initial removal of the child," and that it considered Father's

14

"efforts and progress," including Father's cooperation in availing himself of the services he was offered. The court found that Father had made "substantial" progress "toward alleviating or mitigating the causes necessitating placement in foster care. . . ."

Section 366.21, subdivision (f)(2) requires the juvenile court to "specify the factual basis for its decision." The court did so here by itemizing appellants' proffered evidence and explaining why it was not persuasive. The court indicated that it read and considered the social worker's report and relied on it , as well as "any other evidence presented by the parties," including the substantial court file, portions of the transcript from the previous trial, and the documents submitted by appellants prior to the hearing. During the hearing itself, the trial court addressed the reports appellants offered from J.C.'s doctor, the private investigator's report, the declaration of one of the de facto parents, as well as the additional evidence submitted with appellants' May 2020 section 388 petition. The court explained why it was not persuaded by the evidence. The court considered Father's criminal history subsequent to Father's entry into the proceedings (see § 366.21, subd. (f)(1)(A)), as well as his decisions concerning a party held by his housemate during the COVID-19 shelter-in-place orders. The court indicated on the record that Father had participated in drug testing, with consistently negative results. It considered appellants' contentions that Father was not properly participating in J.C.'s scheduled health care visits, and compared those assertions with the information provided by the social worker demonstrating contrary behavior by Father. We conclude that the juvenile court's statements satisfy the obligation that section 366.21, subdivision (f)(2) imposes on the juvenile court to specify the basis for its decision.

### 2. *The juvenile court did not deny appellants due process.*

Appellants allege that the juvenile court denied them their due process rights. They assert that the Department failed to comply with rule 5.534(k) in providing notice of the 12-month review hearing. They further contend that they were not afforded an opportunity to properly present evidence in support of their position that returning J.C. to

15

Father was against the best interest of the child, citing *In re Matthew P.* (1999) 71 Cal.App.4th 841 (*Matthew P.*) and *Katzoff v. Superior Court* (1976) 54 Cal.App.3d 1079 (*Katzoff*).

### a. Notice

Under rule 5.534(k), appellants had a right to receive notice of the review hearing, and had a right to be heard at the hearing and submit information about the child to the court prior to the hearing using Judicial Council form JV-290 (*Caregiver Information Form*). (Rule 5.534(k)(1) & (2).) At least 10 days before the hearing, the social worker was required to provide to appellants, "[a] summary of his or her recommendations for disposition, and any recommendations for change in custody or status. . . ." (Rule 5.534(k)(3)(A).) There is no dispute that appellants received notice of the May 2020 hearing from the Department more than 10 days prior to the hearing, which included notice that the Department intended to seek family maintenance services for Father. However, the record also indicates that the Department did not serve appellants with the social worker's summary recommendation and evaluation until six days before the hearing.

We note that although appellants' counsel objected that he did not receive the summary recommendation 10 days in advance of the hearing, the gravamen of his complaint was that he did not receive the complete report and therefore could not fully respond to the Department's recommendations. This reflected appellants' continued objection that they were entitled to all juvenile records related to the dependency. But this court has affirmed the limitations that the juvenile court placed on appellants' access to those records. (See *In re J.C.* (July 7, 2022, H048785) [nonpub. Opn.].)

Further, based on the record before us, we perceive no prejudice to appellants from the four-day delay in service of the summary recommendation. Appellants were properly notified that that the Department intended to advocate for family maintenance services, which provided appellants with the opportunity to gather evidence they believed

16

demonstrated that maintaining J.C.'s placement with Father would be detrimental to the child. They also requested that the court consider its complete record, including the May 2020 section 388 petition appellants filed challenging the placement with Father. These documents outlined appellants' position and included evidence and declarations related to the detriment they believed J.C. would suffer if he was placed with Father. Appellants have not identified any additional evidence that they were unable to present due to the delayed service of the recommendation summary. Noting appellants' robust advocacy and their vigorous proffer of evidence before and during the review hearing, we find no prejudice that compels reversal of the court's order due to the delay in service of the summary recommendation following timely service of the Department's 12-month review notice.

b. Presentation of Evidence

Appellants assert that their due process rights were violated because the court did not allow them to present evidence at the review hearing. We observe that the court in fact reviewed all of the evidence appellants submitted in their April and May 2020 section 388 petitions, which included a 15-page declaration from one de facto parent outlining Father's deficiencies as a parent, an investigative report, and public reports of Father's criminal history. The court also assessed late-submitted evidence in the form of a letter from the child's pediatrician and attached medical records, and reviewed the curriculum vitae of appellants' proposed expert witnesses. The court appeared to consider this evidence, although it designated it as an offer of proof, when it issued its order returning the child to Father. But the court would not allow appellants to augment their proffer with testimonial evidence, and would not allow appellants to cross-examine the Department's social worker regarding her report and recommendations. We thus consider whether the juvenile court's failure to allow appellants to present testimonial evidence and cross-examine the social worker denied these de facto parents due process.

17

Because a juvenile court at the dispositional hearing must consider all evidence relevant to the minor's best interests, including alternatives for placement, persons having de facto parent status "should be permitted to appear as parties in juvenile court proceedings . . . to assert and protect their own interest in the companionship, care, custody and management of the child." (*In re B.G.*, *supra*, 11 Cal.3d at p. 693, fn. omitted; accord *In re Kieshia E.* (1993) 6 Cal.4th 68, 76 ["[w]ithin its limited scope, the doctrine of de facto parenthood has since [the *In re B.G.* decision] been liberally applied to ensure that all legitimate views, evidence, and interests are considered in dispositional proceedings involving a dependent minor."].)

Under rule 5.534(a), at "the dispositional hearing and any hearing thereafter at which the status of the dependent child is at issue," de facto parents have the right to (1) be present, (2) be represented by retained counsel (with the court having the discretion to appoint counsel on their behalf), and (3) present evidence. But they do not have full participatory rights and are not accorded the full rights of parents or guardians in dependency proceedings. (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1627-1628.) While rule 5.534(g) expressly grants biological parents, guardians, and dependent children the right to cross-examine witnesses, compel witness testimony, receive all court-filed documents, including the social study, and inspect documents upon which the social study was based, de facto parents are not afforded this full opportunity. (Rule 5.534, subd. (e).) " 'De facto parents are parties,' but they are only 'entitled to procedural due process to the extent necessary and appropriate for them to assert [their] recognizable interest in the child [citations].' [Citation.]" (*In re Damion B.* (2011) 202 Cal.App.4th 880, 888 (*Damion B.*).)

Appellants cite *Matthew P.* and *Katzoff* to argue that de facto parents have a right to a full evidentiary hearing, with live testimony and the right to cross-examine witnesses. *Katzoff* is easily distinguishable from the facts here. There, the juvenile court declined to consider any evidence presented by de facto parents to challenge the removal

18

of the child from their home for placement with another foster parent. (*Katzoff*, *supra*, 54 Cal.App.3d at pp. 1082-1083.) The appellate court determined that the juvenile court erred in doing so, stating, "If the participation of the foster parents, either through their testimony *or by their presentation of other evidence*, would have provided the court with relevant information as to [the child's] best interests, the court should have permitted their participation and considered the evidence presented. [Citation.]" (*Id.* at p. 1084, italics added.) *Katzoff* does not require an evidentiary hearing with testimony and cross-examination; it requires that de facto parents be allowed to present at least some evidence when their participation would provide relevant information about the dependent child's best interest. As the juvenile court considered the evidence appellants presented through their pleadings and written submissions, appellants were afforded the right to present evidence here.

In *Matthew P.*, the de facto parents filed a section 388 petition to regain custody of the subject children, after the children had been removed from their home and placed in respite care. (*Matthew P.*, *supra*, 71 Cal.App.4th at p. 847.) The juvenile court admitted a letter from one of the de facto parents, as well as several reports from the social worker and other agencies, but denied the de facto parents' request to cross-examine the social worker. (*Id.* at pp. 847-848.) The appellate court concluded that the juvenile court erred, finding that "the circumstances [of the case] required the juvenile court to conduct a full hearing rather than limiting it to declarations under the court rules." (*Id.* at p. 851.) Such a hearing was necessary in the context of the section 388 hearing to "balance the [de facto parents' interest] in regaining custody of the boys and in telling their side of the story about what they believe is the best interest of the boys against the government's interest in serving the best interests of the boys by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings." (*Ibid.*)

We find appellants' circumstances more analogous to *Damion B.*, *supra*, 202 Cal.App.4th 880, wherein the appellate court determined the circumstances of the case

19

did not require the juvenile court to provide the de facto parents with a full evidentiary hearing. As was the case here, in *Damion B.*, the juvenile court issued an order returning dependent children to their parent's custody following a post-disposition review hearing. (*Id.* at p. 887.) The children had been placed with the de facto parents for over a year at the time the court held the hearing. (*Id.* at pp. 882-883.) The de facto parents opposed the recommendation that custody should be restored to the children's parent. (*Id.* at p. 883.) They submitted caregiver information forms in advance of the hearing, but also asked the court to hold an evidentiary hearing and requested that they could cross-examine the social worker. (*Ibid.*) The court offered the de facto parents the opportunity to make an offer of proof as to the additional information they would present at a hearing beyond what they already offered in the caregiver information forms, which the court acknowledged it had read and considered. (*Ibid.*) After hearing from their attorney, the juvenile court determined that the de facto parents' procedural rights were met by the court reviewing the caregiver forms they provided prior to the hearing, given that de facto parents do not have the same rights and responsibilities of parents or guardians. (*Id.* at p. 887.)

The appellate court upheld the juvenile court's order, distinguishing the facts in *Damion B.* from those in *Katzoff* and *Matthew P.* (*Damion B.*, *supra*, 202 Cal.App.4th at p. 888.) "[The de facto parents] were not shut out of the dependency proceeding. As the juvenile court correctly noted, [the de facto parents] had appointed counsel, they received notice of proceedings, and they did acquaint the court with their opinion as to the minors' placement. Unlike the de facto parents in *Matthew P.*, appellants were not completely precluded from submitting their opinion, in the form of their caregiver information forms." (*Damion B.*, at pp. 889-890.) The appellate court took note of the "considerable pains" taken by the juvenile court "to ascertain both the nature of appellants' position (opposing returning custody to the mother), and what sort of proof they wanted to submit. . . . It is clear that appellants disagreed with the Agency's recommendation that

20

the minors be returned to their mother's custody. It is also clear that the basis of appellants' disagreement was their belief that the mother was inadequately informed about 'Damion's basic medical needs' and 'Dominick's basic and special medical needs,' and was inadequately prepared to deal with those needs. The dates of the 'appointments' for her children that the mother had not attended were provided to substantiate appellants' claim. Having [the de facto parents] take the stand and testify to the same information could appear to the juvenile court as, at best, cumulative to what appellants had already produced with their caregiver information forms. Such a decision would be well within the court's discretionary power to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . necessitate undue consumption of time. . . .' (Evid. Code, § 352.)" (*Id.* at p. 890.) Nor did the de facto parents establish that the additional witnesses they wanted to call would add pertinent information to the issue before the court, or specify how cross-examining the social worker would undermine the information the social worker had provided in her report. (*Id.* at pp. 890-891.) "In light of the totality of the circumstances, we cannot conclude, using any standard for prejudice, that the curtailment of [the de facto parents'] ability to respond more fully to the Agency's recommendation requires reversal." (*Id.* at p. 891.)

Similar to *Damion B.*, here appellants have not established that there was additional pertinent information they would have provided to the court, beyond that already submitted with the April and May 2020 section 388 petitions, and the e-mail to the court prior to the hearing, had the court allowed a full evidentiary hearing. The juvenile court proceedings honored their right to be present at the hearing with counsel, and to present evidence. The juvenile court acted within its discretion to exclude cumulative evidence in the form of testimony that would duplicate the contentions made in the declarations and statements appellants submitted to the court prior to the hearing. On this record, we cannot conclude that the juvenile court's conduct in constraining the presentation of the appellants' evidence requires reversal.

### 3. *Substantial evidence supports the orders*.

In determining whether the juvenile court erred in placing J.C. with Father at the 12-month hearing, we apply the substantial evidence test. (See *In re B.S.* (2012) 209 Cal.App.4th 246, 252.)  " ' " 'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact.' " [Citation.]  Even if there is no substantial conflict in the evidence, we must nevertheless draw all legitimate inferences in support of the findings of the juvenile court.' [Citation.]" (*Serena M.*, *supra*, 52 Cal.App.5th at p. 674.)  When faced with a challenge to the sufficiency of the evidence on appeal, this court must determine if there is any substantial evidence to support the juvenile court's order, specifically evidence that is reasonable, credible, and of solid value. (*Ibid.*)

Appellants first argue that the court "misunderstood" the facts, contending that the Department reported inaccurate information regarding the care being provided to J.C. while in Father's care, including Father's actual record of attendance at J.C.'s health care appointments.  Appellants presented information to the court both before the hearing and at the hearing expressing their concerns that Father had not attended an appropriate number of J.C.'s medical appointments (including reference to specific dates of missed appointments).  The Department addressed these contentions at the hearing, referencing the social worker's report, which the court considered in addition to the evidence presented by appellants.  The court considered appellants' contentions and determined that they did not support a finding that returning J.C. to Father would be detrimental.

Appellants next argue that the juvenile court "never seemed to address all the apparent risks to the child's health and safety presented in [the April and May 2020 section 388 petitions] and related filings."  Appellants do not cite any legal authority supporting their contention that the juvenile court was required to address every potential

risk raised by the de facto parents. But the court did address the facts appellants contended proved that J.C. was subjected to substantial risk of detriment if returned to Father. It considered the evidence proffered by appellants concerning the party held at Father's home during the COVID-19 shelter-in-place orders, the contentions that Father did not meet J.C.'s special medical needs, that Father did not disclose the existence of three other children who lived in California, and that Father and his girlfriend engaged in illegal conduct even after Father commenced the reunification plan in the dependency proceeding. It also considered competing evidence presented by the Department addressing each of these issues and found it more persuasive. The court explained at length why appellants' proffered evidence did not compel the court to conclude that the return of J.C. to Father created a substantial risk of detriment to his well-being. (§ 366.21 (f)(1).)

Because our review of the record demonstrates that the juvenile court's decision to return the child to Father was supported by substantial evidence, we must affirm the 12-month review order.

### III. DISPOSITION

The juvenile court orders issued February 26, 2020, March 17, 2020, March 18, 2020, March 25, 2020, April 15, 2020, April 16, 2020, and April 17, 2020, are affirmed (No. H048081).

The May 28, 2020 12-month review hearing order is affirmed (No. H048305).

The juvenile court order issued August 4, 2020 is affirmed (No. H048495).

The November 12, 2020 order dismissing dependency jurisdiction is affirmed (No. H048740).

_____

Greenwood, P. J.

WE CONCUR:

_____

Grover, J.

_____

Lie, J.

H048081, H048305, H048495, H048740

In re J.C.; Santa Cruz County HSD v. D.S. et al.